## FAIRY v. KENNEDY.

1. SALES—CHILLING BIDS.—An agreement intended to chill bidding at a judicial sale, to which all parties in interest are parties, will not vitiate the sale.

2. IBID.—IBID.—A party cannot hold a purchase of land at judicial sale made under an agreement with the owners, which he refuses to carry out, and which cannot be enforced on account of the statute of frauds or for lack of definiteness.

3. PLEADINGS.—AN AMENDMENT to a pleading is proper after argument and evidence which does not present a distinct and different cause of action, which would have to be established by different and distinct allegations or proof.

Before J. E. McDONALD, special Judge, Barnwell, September, 1903.    Affirmed.

Action by Julia L. Fairey *et al.* against W. H. Kennedy *et al.*    From Circuit decree, defendants, W. H. Kennedy and A. M. Kennedy, appeal.

*Messrs. J. O. Patterson* and *Allen J. Green,* for appellants. *Mr. Green* cites: *Parties should be left as Court found them:* 43 S. C., 320; 25 S. C., 405; 9 Am. R., 531; 6 Rich. Eq., 347.    *As to amendment after trial:* Code of Proc., 194; 18 S. C., 305; 21 S. C., 221; 30 S. C., 564; 19 S. C., 567; 64 S. C., 493.

*Mr. B. T. Rice,* contra, cites: *Acts of Kennedys tend to defraud the owners:* 1 DeS. Eq., 300; Rice Eq., 32; 1 Rich.

Eq., 91; 3 Rich. Eq., 429; 2 Rich. Eq., 296, 177; 13 S. C., 158; Rich. Eq. Cas., 122. *Agreement among parties in interest to chill bidding is not illegal:* 83 N. Y. R., 83; 3 Met., 384; Chitty on Con., 673; 103 Penn., 266; 68 Ga., 25; 4 Den., 287; 1 At., 719; 2 Rich. Eq., 355; 5 S. C., 136; 2 Rich. Eq., 355. *As to parties being pari delicto:* Brown's Legal Maxims, *518, 579, 571; 18 Am. St. R., 422; 5 S. C., 136; 4 Johns. Chan., 254.

March 21, 1904. The opinion of the Court was delivered by

MR. JUSTICE WOODS. A synopsis of the pleadings is necessary to a clear understanding of the issues involved in this cause.

The following are substantially the allegations of the complaint: Mrs. Elizabeth Wade executed a mortgage to the defendant, W. H. Kennedy, in 1886, and died intestate in 1896, leaving her husband and a number of children as her heirs. The husband afterwards died, leaving the children as his heirs. Two daughters, Mrs. McCurley and Mrs. Nipson, died intestate after their mother, the first leaving as her heirs a husband and one minor child, and the second, a husband and two minor children.

Kennedy, the mortgagee, recovered a judgment of foreclosure in 1897 in an action to which all who claimed an interest in the land through Elizabeth Wade were parties. The master sold under this judgment, and "W. H. Kennedy became the purchaser thereof by and through his son and partner in business, A. M. Kennedy, one of the defendants herein." Before the sale was made W. H. Kennedy agreed with W. D. Wade, a son of Mrs. Wade, and F. A. Fairey, husband of one of her daughters, acting for all the heirs of Mrs. Wade, that he would bid off the land and allow the heirs two years to redeem it by paying the judgment and $200 owing to W. H. Kennedy by W. D. Wade individually; Fairey and W. D. Wade were to hold and cultivate the land and apply the profits to the debts. In pursuance of this

agreement, W. H. Kennedy, through A. M. Kennedy, bought the land for $1,210, and W. D. Wade alone, with Fairey's consent, went into possession, and made payments to W. H. Kennedy on the indebtedness. The other parties for whose benefit the agreement was made also made payments. After receiving these payments, W. H. Kennedy violated and renounced the agreement, colluded with W. D. Wade to exclude all the other heirs from participation in the benefits to be derived from the redemption of the property; and W. D. Wade is now in possession of the land under some separate agreement to purchase. The property mentioned "is worth $3,000 or more, and in consequence of said agreement entered into between the said W. H. Kennedy and the heirs at law of Mrs. Elizabeth Wade, the same was sold at a great sacrifice, as it was understood at said sale that said land was to be bid off for the benefit of the said heirs at law, and the bidding was chilled by reason of said agreement."

The plaintiffs allege their readiness and desire to carry out the terms of the contract made with Kennedy for the benefit of all the heirs, and demand judgment for an accounting for all rents and other payments made by W. D. Wade and the other heirs; that plaintiff be allowed to pay the indebtedness remaining due under the contract, and that upon such payment, W. H. and A. M. Kennedy be decreed to execute fee simple title to the heirs of Mrs. Wade.

All who claim through Mrs. Wade are parties plaintiff or defendant. The infant defendants in their answer join in the prayer of the complaint.

W. D. Wade and C. L. Wade in their answers allege that the land brought a fair price at the master's sale, and deny that the bidding was chilled. They deny that any contract was made with W. H. Kennedy before the master's sale for the redemption of the land, and allege that after the sale, W. D. Wade made a contract of purchase with A. M. Kennedy, which was to be for the benefit of all the Wade heirs; that he paid about $400 on this contract, a part of which came from some of the other heirs; that he has not been able to

pay the remainder of the purchase money, and the heirs have not come to his assistance. They ask for an accounting by A. M. Kennedy of the sums received, and that he be required to execute a deed to W. D. Wade and such other of the Wade heirs as shall come in and contribute their portion of the purchase money.

W. H. Kennedy, in his answer, denies that he made the contract set up in the complaint, or that A. M. Kennedy purchased the land for him, or that he has any interest in it, or that he has received money from any of the Wade heirs on a contract of purchase.

The answer of A. M. Kennedy sets up an independent purchase by him of the land at the master's sale, and contains an allegation that he has no knowledge or information sufficient to form a belief as to the alleged contract with W. H. Kennedy. Both the Kennedys allege the land was bought for a fair price at a fair sale, without any chilling of the bidding.

Upon the call of the case for trial, the defendants interposed the following demurrer:

"The defendants now move to dismiss the complaint herein on the ground that the case does not state facts sufficient to constitute a cause of action, in this: .

"1. That it appears from the face of the complaint that the agreement or contract sought to be enforced and set up in the complaint by the plaintiff is one that contravenes established principles of public policy, in that it tends to prevent and did prevent full and free competition at the judicial sale, as alleged in the complaint, and hence is illegal and void, and cannot be enforced in a court of justice; and

"2. It also appears from the complaint that the plaintiffs are in *pari delicto* with the defendants, and the Court will not lend its aid to either party, but will leave them where it found them."

The Circuit Judge overruled the demurrer. W. H. Kennedy and A. M. Kennedy are the only appellants, and their first and second exceptions involve the correctness of this

ruling.    The demurrer. is based on the proposition that an agreement intended to chill bidding at a judicial sale is under all circumstances regarded such a legal wrong that no rights can be claimed under it.    Such agreement is denounced by the law as contrary to public policy, for the reason that it operates as a fraud upon those interested in the sale of property.    *Hamilton* v. *Hamilton,* 2 Rich. Eq., 384; *Barrett* v. *Bath Paper Co.,* 13 S. C., 158; 15 Am. & Eng. Ency., 950.    Where all parties interested unite in the contract or subsequently sanction it in the promotion of their interests, the rule has no application, for the obvious reason that there is nobody left to be defrauded. In this case the complaint alleges the contract to bid in the property which resulted in chilling the bidding was made by the judgment creditor with two of the heirs acting for all other interested parties.    The object was to secure time to buy back the property for the benefit of all concerned.    It is true, the infant defendants were not bound by the agreement, though it was intended for their benefit, and they could have repudiated it; but by their answer, through their guardians *ad litem,* they have asked the Court to enforce their rights under it.    For these reasons we think the demurrer was properly overruled, and the first and second exceptions cannot be sustained.

In the third exception the appellant submits that the Circuit Judge should have dismissed the complaint after hearing the evidence on the same ground as that stated in the demurrer, and this exception falls with the first two.

After discussion of the merits of the case, the Circuit Judge held that the plaintiffs "failed to establish by satisfactory proof such a clear, definite and certain contract as entitles them to the specific performance thereof," and also that there was no such proof of part performance as would take the contract out of the operation of the statute of frauds; and that for these reasons specific performance, the particular relief demanded in the complaint, could not be granted.

The Circuit Judge, however, found further that though the verbal contract was not sufficiently definite for enforcement, and there had been no such performance as would prevent the application of the statute of frauds, yet that the Wade heirs had relied on the agreement made before the sale by W. H. Kennedy with W. D. Wade on their behalf, and that in consequence of this agreement and the reliance of the Wade heirs on it, the land had been purchased by A. M. Kennedy at much less than its real value, with full knowledge of the agreement. We think this finding is sustained by the great preponderance of the testimony. Not only is there direct proof of some agreement or understanding before the sale, but disinterested witnesses swear that W. H. Kennedy, after the sale, declined to consider any outside offer to purchase, giving as a reason that he had agreed to allow the Wade heirs to redeem or buy back the land. W. H. Kennedy does not deny the contract set up in the complaint, but merely says that he does not remember it.

It is manifest from the conversations after the sale that W. H. Kennedy regarded himself in control of the land after the purchase by his son. From a review of the testimony we think it clear the father and son were acting throughout the whole transaction in concert and not independently, and that A. M. Kennedy is in no position to disavow his father's actions or promises before the sale. In addition to this, a number of the Wade heirs paid in the aggregate, through W. D. Wade, to A. M. Kennedy about $300, their share of the surplus proceeds of the master's sale, on this agreement for redemption made before the sale, and these payments have never been refunded to them.

The owners of the property were lulled into allowing the property to be bought for much less than its value by the promise or representation of the purchasers that they should have a chance to redeem it. To have their bargain, the purchasers must carry out the promise or representation which they made, and it is of no consequence that the promise or representation did not amount to a legal contract.

Having escaped from the promise under the statute of frauds, and because the promise was not sufficiently definite for legal enforcement, they cannot hold the bargain obtained by the promise, for that would be a fraud. *McDonald* v. *May,* 1 Rich. Eq., 91; *Schmidt* v. *Gatewood,* 2 Rich. Eq., 177; Rorer on Judicial Sales, sec. 1111. In this view, the question whether the Kennedys participated in the steps taken to chill the bidding, is of no consequence.

With this application of the law to the facts of the case, we now consider whether it was error for the Circuit Judge, at the conclusion of his decree, to allow the plaintiffs "to amend the complaint in such particulars as they may be advised necessary to raise the question of the validity of the sale of the tract of land described in the complaint."

Amendment of pleadings to conform them to the facts proved, when the amendment "does not change substantially the claim or defense," is in the discretion of the Circuit Judge. *Association* v. *Waters,* 50 S. C., 459, 27 S. E., 948; *Whitmire* v. *Boyd,* 53 S. C., 315, 31 S. E., 306.

In this case the allegations of the complaint as against W. H. Kennedy and A. M. Kennedy were as appropriate to a demand that the sale be set aside as to a demand for specific performance. Scrutiny of the complaint leads to the conclusion that no allegation necessary to a judgment annulling the sale is omitted. The promise, the reliance of plaintiffs on it, the repudiation of it by defendants, the resulting loss to plaintiffs and gain to defendants, are all alleged. The proof was directed to these issues. It is true, in their demand for judgment, the plaintiffs ask for specific performance and not to have the sale set aside, but the demand is not a part of the cause of action, and is not controlling. *Westlake* v. *Farrow,* 34 S. C., 273, 13 S. E., 469. As is said in *Sheppard* v. *Green,* 48 S. C., 175, 26 S. E., 224: "It is well settled that the plaintiffs may obtain any relief appropriate to the case made by the pleadings and evidence, without regard to the form of the prayer for relief." The amend-

ment allowed will not present a distinct and different cause of action which would have to be established by different and distinct proof, and, therefore, does not come within the rule laid down in *Whaley* v. *Stevens,* 24 S. C., 225, and other similar cases.    It is manifest from his decree that the Circuit Judge declined to set the sale aside without the amendment, in careful concern that the defendants interested in sustaining the sale might have no ground to complain that the sale had been set aside without full opportunity being given to them to be heard as to the propriety of that particular relief.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.