## Daniel v. Daniel.

### (Decided January 14, 1921.)

### Appeal from Campbell Circuit Court.

Fraud—Actionable Fraud—Want of Consideration.—A promise unsupported by a consideration and to be performed in the future made by a son to his aged father held to be actionable fraud where it was fraudulently made by the son to defeat his father's right to redeem his land purchased by the son at execution sale for less than one-third of its value, and was relied upon by the father until his statutory right of redemption had expired.

R. G. WILLIAMS and BARBOUR & BASSMAN for appellant.

C. T. BAKER for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Appellant, who is the father of appellee, owned a small tract of land in Campbell county, which was regularly sold by the sheriff under an execution issued upon a judgment against him in favor of a third party. At that sale the land was appraised at $360.00 and appellee became the purchaser for $113.10 which he paid. By section 1684, Kentucky Statutes, the owner may redeem land sold under execution for less than two-thirds of its appraised value by paying within a year after the sale the purchase price with 10% interest, to the purchaser, or to the county clerk if the purchaser refuses to accept same or is a non-resident. When the right of redemption

exists the purchaser can not procure a deed to the land until after the expiration of that right. Appellant did not redeem within the year and appellee procured a deed from the sheriff at the expiration of the year.

Thereafter appellant instituted this action in equity to require appellee to accept the purchase money with 10% for one year and 6% thereafter, which was tendered with the petition, and to reconvey the land to him. A demurrer was sustained to the petition and same dismissed, from which judgment this appeal is prosecuted.

Plaintiff admits in his petition that he was aware of his right to redeem the land within a year by paying to defendant the purchase price with 10% interest, but alleges that he was under the impression the payment had to be made at the court house in Alexandria, which was a long distance from where he and defendant resided; that he is about 76 years of age and has no horse or conveyance; that some weeks before the expiration of his redemption right he went to defendant and informed him that he had the money, desired to redeem his land and that he would get a horse from a neighbor and they would go to Alexandria for the purpose; that defendant knowing of his erroneous impression that the payment had to be made at the court house agreed to take him there to redeem the land, without any intention of doing so but for the fraudulent purpose of defeating his right to redeem; that he relied upon this promise held out to him by his son "during and up to the last day" for redemption; and that he did not discover until too late to make other arrangements for the trip within the redemption period that the son would not carry out his promise and had never intended to do so.

. If these allegations are true, and they must be so considered upon the demurrer, the son has acquired an unconscionable advantage of his aged father by taking advantage of the latter's ignorance of the law and trust in him. The son will have lost nothing, in fact will have received a rate of interest, otherwise excessive and usurious, on his money for a part of the time he has been out its use, if the father is granted the relief he asks, whereas if this relief is denied him the father loses his land and the son gets it for less than one-third of its value. No right of any third party is involved.

Must equity stand impotent under such circumstances? The just and equitable course for both parties

to pursue is at once apparent to the judicial conscience, and surely it can not be true, as counsel for defendant would have us believe, that judicial logic and rules of procedure block the way out of the predicament in which this ignorant and trustful old father finds himself.

No case of course is cited where the facts are even remotely analogous to support defendant's contention, but general rules of equity are relied upon, which being general are applicable to ordinary cases and by their very nature are inapplicable where the conditions are unusual and extreme as here.

The first of these general rules relied upon is that equity aids only the vigilant, and its application here is asked because plaintiff did not exercise diligence in ascertaining the law, which any way he is presumed to have known, and in making tender to defendant as he should have done; and in not demanding at least of defendant that he carry out his promise before it was too late to make other arrangements for going to Alexandria where necessarily he would have learned of his mistaken impression about the law in time to have paid the money to plaintiff before his right of redemption expired.

Even if such diligence would have been required of a stranger this argument is without force here since it wholly ignores the confidential relationship of father and son, and the consequent duties of one to the other, which affect materially the relative term diligence. Diligence as defined by Bouvier is: "The degree of care and attention which the law exacts from a person in a particular situation or given relation to another." Is then a father to be held wanting in diligence when he confidently relies upon the promise of his son? Certainly not upon demand of the son that he may thereby have an unconscionable advantage of the father. It is, we apprehend, as much the delight of equity in a proper case to aid one disarmed of viligance by reason of a confidential relationship, as to aid the viligant in other relationships.

It is next urged that the promise was unenforcible because unsupported by a consideration, and therefore not actionable even if fraudulently made. It is true that as a general rule fraud can not be predicated upon the failure to perform a promise or contract which is unenforcible, but as said in 12 R. C. L. 238, "there is au-

thority for the relaxation of this rule in cases of great hardship," and we have a case of such great hardship here as hardly requires the citation of such authority although we shall do so later as it also covers the next contention of counsel.

Our attention is next called to the fact that the promise was to be performed in the future and such promises ordinarily are held not to be actionable although fraudulent, upon the ground that a mere promise to perform an act in the future is not in a legal sense a representation. But after stating this general rule, in setting out the many exceptions to and modifications of same we find at the head of the list in 12 R. C. L. 257, that "Fraud may be predicated on the non-performance of a promise in certain cases where the promise is the device to accomplish the fraud or where a relation of trust and confidence exists between the parties. So if through inducements held out by one person, even if by means of a promise alone, another is influenced to change his position so that he cannot be placed in *statu quo,* and will be seriously damaged unless the promise is fulfilled, then the refusal to perform is fraud."

The case at bar presents every one of these exceptional elements of actionable fraud.

As said in Fairy v. Kennedy, 68 S. C. 250, 47 S. E. 138, and approved in Kinkaid v. Rossa, 31 S. Dak. 559, Ann. Cas. 1915 D, 1098: "The owners of the property were lulled into allowing the property to be bought for much less than its value by the promise or representation of the purchasers that they should have a chance to redeem it. To have their bargain the purchasers must carry out the promise or representation which they made and it is of no consequence that the promise or representation did not amount to a legal contract. Having escaped from the contract under the statute of frauds and because the promise was not sufficiently definite for legal enforcement they cannot hold the bargain obtained by the promise for that would be fraud." In neither of these actions in which relief was granted to the owner of land from an otherwise legal sale under execution because of an unconscionable advantage obtained by a promise on the part of the purchaser to do an act in the future, was the promise such as could have been enforced. In both cases it was held to be immaterial that the promise was void and unenforcible, and that the ma-

terial facts were that the plaintiff was lulled into a sense of security by and relied upon the promise and that the violation of the promise by the defendant gave him an unconscionable advantage. We have all of these considerations appealing to our conscience here and in addition the confidential relationship of an aged father and his son with its urgent appeal for absolutely fair dealing.

If the son knew the payment did not have to be made at Alexandria, as he as well as the father is presumed to have known, fair dealing at least between father and son required him to correct his father's false impression of the law and not to take advantage of his father's apparent ignorance by promising to carry him to Alexandria to redeem his land. If the son too was ignorant of the law, having promised to provide the conveyance and accompany his father to Alexandria within the redemption period to redeem his land, fair dealing requires of him that he shall not take advantage of the conseqences of his violated and fraudulent promise, which are highly beneficial to him but equally detrimental to his aged father; and justice and good conscience and therefore equity, demand of him that he yet permit his father to redeem his land.

We are therefore of the opinion the chancellor erred in sustaining a demurrer to the petition and in dismissing same.

Wherefore the judgment is reversed with directions for further proceedings consistent herewith.