**EVOLA REALTY CO. et al. v. WESTER-FIELD.**

Court of Appeals of Kentucky.

April 25, 1952.

Rehearing Denied Oct. 17, 1952.

Lawrence S. Grauman, Louisville, for appellants.

Finley F. Gibson, Jr., Louisville, for appellee.

STEWART, Justice.

Nellie B. Westerfield, plaintiff below, recovered judgment for $2,000 damages against Evola Realty Company, Archer-Meder Corporation, A. A. Meder and William H. White, for alleged fraud in connection with the sale to her and her then husband, Earl F. Westerfield, of a piece of improved real estate at 224 Ashbury Road in Louisville.

Defendants appeal, insisting that the trial court erred: (1) in not holding that Earl F. Westerfield was a necessary party to the suit; (2) in overruling defendants' motion for a directed verdict at the close of plaintiff's evidence; (3) in admitting incompetent evidence; (4) in permitting the jury to take to the jury room certain exhibits; (5) in giving Instructions Nos. 1, 2 and 3; (6) in refusing to give Instructions Nos. 1, 2 and 3 offered by defendants; and (7) in failing to hold that the verdict is not sustained by the evidence.

In 1944, Evola Realty Company, a corporation, had under construction a number of houses on lots owned by it in St. Thomas More Subdivision to the City of Louisville. Archer-Meder Corporation, an interlocking company, had charge of the sale of these houses, and A. A. Meder and William H. White were salesmen for this corporation. In the latter part of May, 1944, Mr. and Mrs. Westerfield became interested in buying a house being built at 224 Ashbury Road. At that time only a concrete wall of the basement had been poured and some of the framework had been erected thereon. On May 23, 1944, at the office of Archer-Meder Corporation, a contract was signed by the Westerfields for the purchase of the property together with all the improvements to be constructed thereon at a price of $5,725. A joint deed to the property was executed and delivered on December 30, 1944, by Evola Realty Company to the Westerfields. In June, 1945, marital differences developed between Mr. and Mrs. Westerfield, resulting in their being divorced, and on October 17, 1945, Mr. Westerfield conveyed his undivided one-half interest in the real estate to Mrs. Westerfield. On January 12, 1948, more than three years after she had moved into the house, Mrs. Westerfield instituted this action.

By special demurrer and also in their answer appellants raised the question of defect of parties in that appellee, Nellie B. Westerfield, had no authority to maintain this action unless Earl F. Westerfield was joined as a party thereto. It stands admitted that

Mr. Westerfield was a joint purchaser of the property under the contract dated May 23, 1944, and that he later became a joint grantee in the deed. The record does not disclose that Mr. Westerfield assigned to his former wife the right to sue for damages in respect to the property; nor do appellee's pleadings show any facts that would preclude his being made a party to this litigation.

Under Section 18 of the Civil Code of Practice every action must be prosecuted in the name of the real party or parties in interest. In the joint acquisition of the house, if any damage was sustained by virtue of fraud, appellee does not have the sole right to collect all of the damage but she and Earl F. Westerfield must jointly maintain an action for such recovery. This is a suit based upon tort, and the applicable rule is well stated in 24 Am.Jur., Fraud and Deceit, Sec. 240, p. 69, in this language: "Under accepted principles of practice persons jointly affected by a tort must join in an action to recover for the injury. Joint purchasers of real estate bought in reliance upon false representations concerning the size and location of the property must join in an action to recover damages for the fraud thus perpetrated upon them, as must partners, who seek to recover damages for fraud including the sale of the firm property." As Mr. Westerfield was a necessary party to this action, the trial court committed reversible error when it refused to sustain the special demurrer and thereby authorized appellee to sue in her name alone. See also 39 Am. Jur., Parties, Sec. 32, p. 896.

Appellee claims a misrepresentation of the property as a result of a conversation, first, with appellant, White, and, next, with appellant, Meder. She testified that both White and Meder told her the house, under construction at the time, was being erected according to F.H.A. specifications. White disclaimed having made the statement which appellee attributed to him, and Meder denied that he ever at any time made any representation to the Westerfields concerning the structure. The two conversations, according to appellee, occurred shortly before or at the time the agreement to acquire the house was entered into. It was also proven that large signs had been placed in the subdivision with the wording "F.H.A. Approved and F.H.A. Financed Homes" written on them.

Appellants' argument for a directed verdict is pitched upon a two-fold theory: First, it is claimed the alleged misrepresentation relied upon by appellee related to future actions and conduct and any failure of appellants to perform under the circumstances amounted in fact to a breach of contract; and, second, it is contended there was no proof of an intention not to perform when the representation was made by appellants with reference to the house, assuming such was made.

Edgar W. Archer, president of both Evola Realty Company and Archer-Meder Corporation, testified that F.H.A. specifications were not followed in constructing the dwelling. Meder was asked these questions and made these answers thereto:

"Q. 37. Was it your understanding if it was an F.H.A. Approved home, that the minimum specifications of F.H.A. were followed in constructing the homes? A. I knew that they could not be, because of the variations due to the war effort at that time."

"Q. 39. In other words, you knew that the homes were not built according to minimum specifications of the F.H.A.? A. That is right."

It is primarily upon the testimony we have just recited and which we have heretofore adverted to that appellee bases her contention that the promise made to appellee and her ex-husband to induce them to purchase the property was made in bad faith and without any intention upon the part of appellants to perform the agreement. If Meder and White told the Westerfields the house would be built according to F.H.A. specifications when they knew it could not be constructed in compliance with even the minimum requirements of the F.H.A., there was a misrepresentation of an existing fact upon which fraud may be predicated.

That fraud may be founded upon the nonperformance of a promise, where

promise is made for the purpose of accomplishing deceit, seems to be well established. The fact that the thing promised lies wholly in the future is not conclusive against the right to rely upon fraud, based upon nonintention to perform. See 37 C.J.S., Fraud, § 12, p. 237. It has been said that when a promise is made, the promisor, by necessary implication, asserts a present and bona fide intention to perform; if, however, notwithstanding such implied assertion of a fact, the intention to perform be not present, there is a misrepresentation of a fact upon which fraud may be based. See Daniel v. Daniel, 190 Ky. 210, 226 S.W. 1070; Foster v. Dwire, 51 N.D. 581, 199 N.W. 1017, 51 A.L.R. 21; and Section III to Annotation of Palmetto Bank & Trust Co. v. Grimsley, 134 S.C. 493, 133 S.E. 437, 51 A.L.R. 42.

■ Nor can we say as a matter of law that proof is lacking that appellants did not intend to deceive or mislead the Westerfields. Without resorting to a detailed description of the serious defects in materials and workmanship that showed up in the house, as brought out by numerous witnesses of appellee, we may state that there is ample testimony to support appellee's assertion that the house was not built in accordance with F.H.A. specifications. This evidence, coupled with Archer's and Meder's statements that they knew the house would or could not be built to comply with F.H.A. requirements, which fact was never revealed to the Westerfields, tends to dissipate appellants' vigorous insistence that they acted all along in good faith.

■ We agree with appellants that the trial court erred when it allowed appellee as a witness to introduce and file in evidence, over appellants' objection, two exhibits. These were bulletins purportedly issued by the Federal Housing Administration and were described as "Minimum Construction Requirements for New Dwellings Located in the State of Kentucky, Revised August 15, 1940", and as "Minimum Property Requirements for Properties of One or Two Living Units Located in the State of Kentucky, Revised December 1946." Appellee had concededly never had any connection with the Administration, nor had she any official knowledge as to the contents of either pamphlet, so that she was not a competent authority to establish the authenticity of the two documents. The court also did violence to appellants' cause in permitting the jury to take these exhibits to the jury room and consider them. Then, too, the house was constructed in 1944 during World War II at a time when material shortages of every type were acute, and it was not established by any proof that F.H.A. specifications which were in force for the years 1940 or 1946 were applicable to the year 1944.

Appellants next urge that the first three instructions given were erroneous. "Instruction 1", it is claimed, omitted one of the elements of actionable fraud, namely, that the representation therein named was made with knowledge of its falsity. "Instruction 2" is attacked because it required the jury to find for or against all of the appellants. "Instruction 3" is criticized for the reason that it fixes the amount of recovery at such sum as would represent the cost of placing the house in the condition which would comply with the minimum F.H.A. specifications.

■ There is merit, we think, to the first two contentions of appellants. As all of the elements of fraud must exist in order for a plaintiff to be entitled to a recovery, and since one of the essential elements of actionable fraud is the speaker's knowledge of the falsity of a representation made by him, it was error to omit this element from Instruction 1. See Trimble v. Reid, 19 Ky. Law Rep. 604, 41 S.W. 319. It is elementary that one defendant may or may not be liable for the acts of his codefendants; and that where wrongdoers have not acted in concert, so that separate and distinct injuries are caused by the acts of each, the liability is several only. On a retrial of this case, if the facts be the same, Instruction 2 should be given to conform to this rule. See Wilder v. Bailey, 233 Ky. 238, 25 S.W.2d 381. Instruction 3 complained of has been approved in the recent case of Evola Realty Co. v. Scott, 306 Ky. 119, 206

S.W.2d 466, and we think it sets forth the proper rule for determining the measure of damage in this kind of case.

Instructions 1 and 2, tendered by appellants, the first relating to White and the other to Meder, would have told the jury that if the alleged representation of each of them was his opinion, and neither knew the representation was false at the time it was made, the jury should find for the appellants. Since the evidence developed in this case formed no basis for the giving of these two instructions, the trial court properly rejected them. See Stanley's Instruction to Juries, Sec. 19, p. 30. Instruction 3 offered by appellants embraced their theory relative to the measure of damage, and this contention has already been disposed of.

Wherefore, the judgment is reversed for proceedings not inconsistent with this opinion.