## MARY E. HENRY *v.* JOHN F. BROWN.

On a judgment in favor of the guardian of an infant against A., execution was levied on a house and lot, the house, as alleged by the bill, having been built by A., with trust moneys of the infant in his hands, on a lot of A. At the sheriff's sale B. gave out that he intended to buy the property for the infant and convey it to her, to save her from loss by A.'s inability to pay her claim against him, and represented that the house and lot were subject to a mortgage of $7,000. Under these representations the house and lot, valued at $5,000, were struck off to B. for $7. There was a mortgage on record for $7,000, given by A. and B., on the said house and lot and lands of B.; but, previous to the sheriff's sale, an arrangement and written agreement had been made between A. and B., by which B. was bound to pay off and discharge the mortgage; and it was actually paid off by B. and cancelled of record shortly after the said sheriff's sale.

*Held:* That the proper relief would be to set aside the sheriff's sale; and the complainant, the infant that was, was permitted to amend her bill so that such relief could be given.

B. having mortgaged the house and lot after he received the sheriff's deed therefor, it was held that the mortgagee should have been made a defendant; and leave was given to amend the bill in this respect also.

The bill, filed March 23, 1847, states, that John Henry, the father of the complainant, on the 19th of November, 1825, made his will, whereby he gave and devised to the complainant, his only child, as follows : " As to the residue of my estate, of whatever description, " I give the same to my executors, in trust, first, that the sum of $7,000 be set apart by my executors and appropriated to the maintenance and education of my infant daughter (the complainant) in the following manner, that is to say : that the full interest of the said sum be paid, annually, to my beloved wife, as the natural guardian of my said daughter, until she attain the age of six years. After which time, it is my desire that my said executors retain the said interest in their hands, and appropriate the same, or so much as may be necessary, to the maintenance and education of my said daughter until she attain the age of twenty-one ; at which time I order and direct the said sum of $7,000, together with the unexpended interest, to be paid to her for her own use and benefit forever."

That Peter I. Stryker, the grandfather of the complainant,

and Peter D. Vroom were appointed executors of the said will. That the will was proved on the 28th of December, 1825, by the said executors. That the said Stryker received into his hands the said $7,000, and had the particular care and management thereof.

That the said Stryker, being the owner of a building lot on the main street of the village of Somerville, which cost about $200, some time about the year 1836, having the said legacy to the complainant in his hands, with a part of her said money erected on the said lot a two story brick dwelling house, and put other improvements thereon, at a cost of about $5,000; the said Stryker giving out and stating, at the time, that the said house and improvements were put on the said lot with the money of the complainant.

That, about March, 1837, the said Stryker still having in his hands, of principal and interest of the said legacy, $3,000 or thereabouts, John F. Brown, professing to be the particular friend of said Stryker and of the complainant, and well knowing that the said Stryker, as executor and trustee as aforesaid, had money in his hands belonging to the complainant, applied to the said Stryker to assist him in fulfilling a contract which he had made with William Van Hook and John S. Blauvelt, trustees to sell real estate late of Robert Morris, deceased, for the purchase of about 392 acres of land in the township of Bernard's, Somerset county, for the sum of $10,500; the said Brown representing, at the time, that said purchase would be very profitable to him; that with some ready cash furnished by said Stryker, which would be perfectly safe, he would be able to obtain a title for the said lands.

That said Stryker, putting confidence in the representations of said Brown, afterwards, on or about April 1, 1837, advanced, of the said funds of the complainant in his hands, to the said Brown, $3,000, in cash, in order to enable him to comply with his contract with said Van Hook and Blauvelt. That said Brown paid or secured to be paid to said Van Hook and Blauvelt the further sum of $500; leaving $7,000 due them, which it was proposed should be secured on real estate other than said

392 acres. Whereupon the said Brown and wife and Stryker and wife united in a joint mortgage on certain real estate owned by said Brown and on the said brick house and lot, to secure to the said Van Hook and Blauvelt the said sum of $7,000; which mortgage was recorded &c.

That said mortgage was duly cancelled of record on the 23d of October 1840.

That, on the 25th of April, 1837, the said Brown conveyed two third parts of the said 392 acres to the said Stryker. That, on the 2d of August thereafter, it was agreed by and between said Brown and Stryker, under their hands and seals, among other things, that the said Stryker having on that day, by deed duly executed, reconveyed to the said Brown the said two thirds of the said 392 acres, he the said Brown would pay to the said Van Hook and Blauvelt the said $7,000, and release the property of the said Stryker from the said incumbrance.

That one Thomas Talmage, having been, by the Orphans' Court of Somerset, appointed guardian of the complainant, some time in January, 1840, made a settlement with said Stryker, by which there was found to be in the hands of said Stryker, as executor and trustee as aforesaid, and belonging to the complainant, the sum of $10,000; for which sum the said Talmage, guardian as aforesaid, afterwards on the 20th of January, 1840, obtained a judgment in the Court of Common Pleas of the county of Somerset; on which judgment a *fi. fa. de bonis et terris* was issued, and delivered to the then sheriff of the said county, who, by virtue thereof, advertised the said brick house and premises to be sold on the 29th of June then next. That after the said advertisement and before the said day of sale, the said Brown went to the said Stryker and Talmage, and stated to them, or one of them, and also to other persons, that he knew that the said lot had been purchased and the said brick house and other improvements put thereon, by said Stryker, with the money of the complainant; that the complainant should not be injured in any way, but be benefitted by the contemplated sale; that it was his intention to bid off the same for her, as it would bring but a mere trifle with said $7,000 mortgage upon it, and which

he was bound to pay off and discharge; that, after getting the sheriff's deed, he would convey the said house and lot to the complainant whenever he should be required to do so. That said Stryker and Talmage, believing said Brown to be sincere, and putting full confidence in his declarations and integrity, assented to his said proposal.

That, at the time and place of said sale, on said 29th of June, 1840, several able and responsible persons attended, and were present for the purpose of bidding upon and purchasing the said property, which was then worth upwards of $5,000. That said Brown attended the said sale and considered himself the friend of the complainant; represented her as an orphan, and in danger of losing her property; and that it was his intention to purchase the said property for her. That in consequence of these declarations persons present desisted from bidding; and the said brick house and lot and premises were struck off and sold by the said sheriff to the said Brown for the nominal sum of $7, there being no other incumbrance thereon but the said mortgage to Van Hook and Blauvelt for $7,000.

That the said sheriff, afterwards, on the 20th of August, 1840, executed and delivered to the said Brown a deed for the said property, which was duly recorded.

That the said sheriff, in 1840, by virtue of two executions against said Stryker, one in favor of C. J. Tunison, and the other in favor of said Talmage, guardian as aforesaid, sold the whole of the real and personal property of said Stryker, except the said brick house and lot; from which sales the said guardian realized for the complainant about $2,000.

That some time before said sales the said Stryker became and was, and still continues to be greatly embarrassed in his circumstances. That he was then, and the complainant believes still is unable to pay, as well the complainant her said claim, as also other large sums of money which he then and still owes. That said brick house and lot are principally relied upon by the complainant to obtain the balance of her said claim from the said Stryker; and she has good reason to believe, that unless the

said Brown conveys to her the said house and lot she will lose nearly or quite $7,000 of her said claim.

That, ever since the said brick house was built, the said Stryker has lived in the same; the complainant, since the death of her mother, August 4th, 1832, having lived with her grandfather, the said Stryker.

That the complainant attained twenty-one on the 10th of November, 1846. That since that day the said Brown has been frequently requested to convey to the complainant the said brick house and premises; but he refuses so to do, and claims the same as his own; and has incumbered the same by mortgage for $900; and has, by advertisements in writing, advertised the same to be sold at public vendue, at &c., on the 3d day of April next.

The bill prays, that Brown may be decreed to execute, by himself and wife, to the complainant a good and sufficient deed for the said house and lot, and to satisfy and to pay all incumbrances which he has placed, or caused or permitted to be placed thereon. And that he may be restrained by injunction from selling or incumbering the same. Process is prayed against Brown alone.

An injunction pursuant to the prayer of the bill was allowed.

An answer was put in; and a replication filed; and depositions taken. And the cause was brought to hearing on the pleadings and evidence.

*T. A. Hartwell* and *P. D. Vroom* for the complainant.

*W. Halsted* for the defendant. He cited 10 *Peters*, 178; 1 *Gill & John.* 65; *Gresl. Eq. Ev.* 161; 9 *Blackf. Rep.* 265; 2 *Iredell*, 132; 1 *Dev. & Bat.* 410; 9 *Alab. Rep.* 973; 3 *Dana*, 229; *Cox N. J. Rep.* 39; 1 *U. S. Dig.* 376; 3 *Green's Ch.* 310; 3 *Watts & Serg.* 314; 6 *Hal. & John.* 252.

THE CHANCELLOR. The proper relief will be to set aside the sheriff's sale.

The complainant will be permitted to amend her bill so that such relief can be given.

The bill is, also, defective as to parties. The persons to whom Brown has mortgaged the house and lot, since he received the sheriff's deed therefor, should be made defendants. The bill may be amended in this respect also.