Civil action to recover damages for an alleged breach of trust.
In 1917 the plaintiffs were financially embarrassed. They owned a valuable brick plant and about 682 acres of river-bottom land, situate on the banks of the Catawba in York County, South Carolina. This property was mortgaged to the American Trust Company to secure the payment of certain outstanding obligations, aggregating approximately $34,000. The mortgagee trust company filed suit in the court of common pleas of York County, South Carolina, to collect this indebtedness and to foreclose the mortgages held against said properties.
Regarding the transactions and dealings between the parties subsequent to this date, there was allegation and also proof tending to show that at the time said suit was instituted, and while the same was pending against the plaintiffs, there was no market for the realty covered by said mortgages and no market for the brick plant and machinery covered by same, and the plaintiffs were unable to sell said property, or to raise money with which to pay off the indebtedness held by the defendant trust company; that the United States of America had recently declared that a state of war existed between this county and the German Empire, and the business conditions generally (35) were greatly disturbed and the business of the plaintiffs was practically at a standstill. The plaintiffs, realizing their inability to meet their debts, were preparing to file a petition in bankruptcy when the American Trust Company, through its officers and agents, approached the plaintiffs and represented to them that the said trust company desired to help the plaintiffs in their financial distress; and that if the plaintiffs would not file a petition in bankruptcy, but would consent for a decree of foreclosure to be entered by the state courts of South Carolina, the said defendant would give the plaintiffs until some time in February, 1918, to effect a sale of their property; and that if the plaintiffs should be unable to effect a sale of their property by that time, or raise the money with which to pay off the mortgaged indebtedness, the said trust company would protect the interests of the plaintiffs by buying in the property for them and selling it to the best advantage — it being understood and agreed between the plaintiffs and the American Trust Company that this should be done, if it became necessary to sell, and in this event the defendant was to hold said property in trust for the plaintiffs and sell the same at private sale, with the assistance of *Page 38 
and subject to the approval of plaintiffs. It was further understood that the defendant trust company would use due diligence to sell the property at a fair and reasonable price, acting for and on behalf of the plaintiffs in thus handling the property.
The plaintiffs, relying upon the above representations, permitted the defendant trust company to buy in the South Carolina property, with the exception of a small tract, for the sum of $15,700, which it is alleged was a grossly inadequate price.
There was further allegation and proof tending to show that the American Trust Company did not faithfully discharge the agreement which it had made with plaintiffs, and did not sell the property for the best price obtainable, and did not use due diligence in making sale of same; but carelessly, negligently, and wrongfully, in breach of its agreement with plaintiffs, and in breach of the duties imposed upon it by law, and in breach of the trust imposed upon it by equity, slaughtered and sacrificed said property and sold same at a price which was grossly inadequate, without the consent of the plaintiffs and without consulting the plaintiffs, in violation of the agreement and promise which it had made.
The defendants denied the existence of any trust agreement with plaintiffs, and denied that they had purchased under or in consequence of such agreement; and, on the other hand, alleged that they made diligent efforts to obtain, and did obtain, the best price possible for the property, and pleaded the judgment of the court of common (36) pleas of South Carolina as an estoppel and in bar of plaintiffs' right to recover.
Upon the traverse and issues thus joined, the jury returned the following verdict:
"1. Are the plaintiffs estopped from prosecuting their first cause of action by the final judgment or decree rendered by the court of common pleas of York County, South Carolina, in the consolidated actions in which the American Trust Company was plaintiff and the Charlotte Brick Company and S. S. McNinch et al. were defendants, as alleged in the answer? Answer: `No.'
"2. Did the defendant American Trust Company agree with the plaintiffs to purchase their South Carolina property, if a public sale thereof should be had, and hold the same for the use and benefit of the plaintiffs, and dispose of it subject to their approval, as alleged in the complaint? Answer: `Yes.'
"3. Did the plaintiffs rely upon said promise and allow said property to be bid in by the defendant, as alleged? Answer: `Yes.' *Page 39 
"4. If so, did the defendant American Trust Company bid in the said property at a grossly inadequate price, as alleged? Answer: `Yes.'
"5. If so, did the defendant American Trust Company wrongfully and negligently dispose of said property for less than its value, as alleged? Answer: `Yes.'
"6. What damages, if any, are the plaintiffs entitled to recover of the defendant American Trust Company? Answer: `$20,344.'"
Judgment on the verdict in favor of the plaintiffs; defendants appealed.
After stating the facts as above: The foregoing statement of the case will suffice for a sufficient understanding of our present decision. There are other circumstances, relating chiefly to the second cause of action, which are deemed unnecessary to be set out in detail, as they are only subsidiary to the objective and controlling facts above stated.
His Honor directed a negative answer to the first issue; and this presents for our consideration the validity of the defendants' plea of estoppel, based upon the judgment of foreclosure entered by the court of common pleas of York County, South Carolina. The defendants contend an absolute title was decreed by said judgment, and that, under section 7 of the statute of frauds, which is recognized as a part of the South Carolina law, the plaintiffs are not entitled to set (37) up a parol trust in lands; and, therefore, should not be permitted to maintain this suit. Plaintiffs, in reply to this contention, say (1) that the defendants have failed to plead the South Carolina law; (2) that the statute of frauds, including section 7, is no bar to their right to prosecute this action; and (3) that the foreign law is not applicable, but, even if it is, they are still entitled to recover under the verdict rendered herein.
In undertaking to ascertain the relative merits of these opposite and conflicting claims, a clear understanding of the exact basis of the alleged cause of action becomes essential and indispensable. Plaintiffs are not seeking to recover on the agreement nor to have it specifically enforced; but the gravamen of the complaint is the alleged mala fide of the defendant in procuring the title in confidence and failing to discharge the trust in keeping with the principles of equity and good conscience. *Page 40 
The statute of frauds was not intended to shelter or to shield frauds, but to prevent them. 39 Cyc., 171. Thus, the ground of equitable relief and immunity from the statute is the fraud, alleged to have been perpetrated, and not the agreement to hold in trust. Floyd v. Duffy, 68 W. Va. 339; 33 L.R.A. (N.S.), 883. It is not the parol contract, but the trust that is sought to be enforced. If the plaintiffs were lulled into security and thereby induced to desist from trying to save their property, and the defendants were permitted to purchase it at a grossly inadequate price, then the right of action rests, not upon the parol contract, but upon the fiduciary relations and transactions of which the agreement was a mere attendant. Hence, for the defendant trust company, in breach of the confidence which it had thus acquired, to repudiate the trust and dispose of said property for less than its value, wrongfully and negligently, would render its claim of absolute ownership contrary to conscience and at variance with the first principles of right. Rice v. Rice, 107 Mich. 241;Thompson v. Thompson, 30 Neb. 489; 26 R. C. L., 1238. This would be an unjust enrichment amounting to a legal fraud, which the law cannot condone.Cook v. Cook, 69 Pa. 443.
On the other hand, with an eye single to the principles of fair dealing and in order to frustrate the wrong thus sought to be done, equity will establish a trust in favor of the plaintiffs so as to prevent what otherwise would amount to a fraud. Stahl v. Stahl, 214 Ill. 131. It is not the fact that the bargain, by which the title was obtained, rests in parol that governs the case, but the fact that the title was procured in confidence, the breach of which constitutes a species of constructive if not actual fraud and bad faith. Arnston v. Sheldon First Nat. Bank, L.R.A., 1918, F., 1038, and note. It would be strange, indeed, if such (38) conduct were beyond the reach of a court of equity. Sumner v. Staton, 151 N.C. 198; Avery v. Stewart, 136 N.C. 437. It is not necessary that actual fraud be shown, but the establishment of such conduct and bad faith on the part of the defendants as would shock the conscience of a chancellor will suffice to invoke the aid of a court of equity. Forbes v. Harrison, 181 N.C. 464. The oral agreement, instead of being a bar to plaintiffs' right to recover, is a pertinent circumstance tending to support the allegations of fraud.
"Where a purchaser at a judicial sale becomes such under such circumstances or state of facts as would make it a fraud to permit him to hold on to his bargain (Collins v. Sullivan, 135 Mass. 461; Hansen v.Hansen, 188 P. 460), as by representing that he is buying for the benefit of those who own or have an interest in the property being sold (Marlatt v.Warwick, 18 N.J. Eq. 108), or that he intends to reconvey *Page 41 
such property (McNew v. Booth, 42 Mo. 189; Henry v. Brown, 8 N.J. Eq. 245), and thereby obtains it at a sacrifice, the courts will relieve against such fraud; and the person who has gained an advantage by means of such fraudulent acts will be converted into a trustee for those who have been injured thereby." 39 Cyc. 176.
The trusts thus established or created are usually denoted constructive trusts because they are born of necessity, by operation of law; and, where the facts presented are sufficient to raise such a trust, they take the case out of the operation of the statute of frauds. It is an established rule of equity that the statute will not be allowed to operate as a protection for a fraud, or as a means of seducing the unwary into a false confidence, whereby their intentions are thwarted, or their interests are betrayed; but against such practices the law, as formerly administered in chancery, sets itself like flint or adamant. Brogden v. Gibson,165 N.C. 16; Avery v. Stewart, 136 N.C. 426; Gorrell v. Alspaugh,120 N.C. 362; Brinson v. Brinson, 75 Cal. 525; 39 Cyc. 170; 26 R. C. L. 1233.
In the English case of Haigh v. Kaye, reported in 7 Chancery Appeal Cases, 469, Lord Justice James, speaking to this question, said: "The defendant admits that he took the estate upon the most positive (oral) agreement to return it; but in another part of his answer he sets up the statute of frauds, and claims the estate as a right. Now the statute of frauds no doubt says that a person claiming under any declaration of trust or confidence must show that in writing; but the statute goes on to say that no resulting trust, and no trust arising from operation of law, is within that enactment. I apprehend it is clear that the statute of frauds was never intended to prevent the court of equity from giving relief in the case of a plain, clear, and deliberate fraud."
This is not only the law as it obtains with us, and as held in other jurisdictions (Griffin v. Taylor, 139 Ind. 573; Hoover v. (39)Strohm, 44 Pa. Sup. 177), but it is also the law of South Carolina, as declared by the Supreme Court of that state.
In Jarrott v. Kuker (S.C.), 59 S.E. 533, the doctrine is announced as follows: "One orally agreed to attend a judicial sale of real estate held by a trustee, and purchased the same for the trustee and hold it as security for payment of the price to him by the trustee. He purchased the premises, and the trustee, relying on the agreement, did not attend the sale: Held, that a trust would be declared in favor of plaintiff on the land notwithstanding the statute of frauds; the relief not being based on the agreement, but on the chilling of the bidding at the sale."
And again, in Bank v. Alderman (S.C.), 91 S.E. 296, Gary, C.J., quotes with approval from 39 Cyc. 169, the following concise and pertinent *Page 42 
statement: "Constructive trusts do not arise by agreement or from intention, but by operation of law; and fraud, actual or constructive, is their essential element. Actual fraud is not necessary, but such trust will arise whenever the circumstances under which the property was acquired make it inequitable that it should be retained by him who holds the legal title. Constructive trusts have been said to arise through the application of the doctrine of equitable estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done. Such trusts are also known as trusts ex maleficio, or ex delicto, or involuntary trusts, and their forms and varieties are practically without limit, being raised by courts of equity, whenever it becomes necessary to prevent a failure of justice."
Possibly it would be well to note, also, that, just as in the English statute, sec. 3677 of the Civil Code of South Carolina, provides that "trusts arising, transferred or extinguished by implication of law," are excepted from the operation of the statute of frauds. See, also, Fairey v.Kennedy (S.C.), 47 S.E. 138, and Knobelock v. Bank, 43 S.C. 233.
This position as it prevails with us is so fully and accurately stated in the leading cases of Avery v. Stewart, supra; Sykes v. Boone,132 N.C. 199, and Davis v. Kerr, 141 N.C. 11, that we content ourselves by referring to these cases as controlling authorities on the subject now in hand.
Thus, under the law as it obtains here and elsewhere, and as declared in the State of South Carolina, it would seem that the plaintiffs are entitled to maintain their suit; and that the statute of frauds is in no way a bar to its prosecution. The equity sought to be enforced does not rest upon the idea of the specific performance of a parol contract, but rather upon the idea of enforcing the execution of a trust — (40) the relation of the parties being that of trustee and cestuis que trustent. Allen v. Gooding, 173 N.C. 93; Russell v. Wade,146 N.C. 116; Cloninger v. Summit, 55 N.C. 513.
But it was earnestly contended on the argument that, as the property in question has been sold, there is nothing to which the trust may attach, and, therefore, it must fail because it cannot be enforced. In reply to this position, it is sufficient to say that the law, in principle if not upon the same state of facts, has been declared otherwise in Mfg. Co. v.Summers, 143 N.C. 102, and Sprinkle v. Wellborn, 140 N.C. 163. Equity is not so easily daunted, for it is that system of jurisprudence in which the conscience rules; it is not bound by form, but seizes the substance and affords relief where the law, on account of its universality, is inadequate or deficient. Its arms are neither short nor palsied; and hence, it will so mould its decrees as to fit the exigencies of each *Page 43 
particular case. It regards and looks upon that as done which of right ought to be done (equity's favorite maxim); and here, the defendant having wrongfully and negligently sold the property which it held in trust at a grossly inadequate price, it is but meet that the offending party should respond in damages to the extent of the value of said property. Newton v.Porter, 69 N.Y. 133.
It should be observed that we are not now dealing with the principles of an express trust, or one based solely upon contract, stripped of any element of actual or constructive fraud. It will be readily conceded that the mere nonperformance of a parol agreement, unaccompanied by any circumstances of oppression or inequitable conduct, would not of itself entitle the plaintiffs to relief. 39 Cyc. 178. Herein lies the distinction between the contentions and arguments of the opposing sides to this controversy. Plaintiffs maintain that a constructive trust has been shown and established, while the defendants earnestly contend that, at most, only an express parol trust has been alleged or proven. The authorities cited and relied upon by both sides are clearly distinguishable by reason of the underlying differences of the two positions. From the hypothesis or premise of each the opposite and divergent conclusions readily follow. But in the light of the verdict, as rendered by the jury, it would seem that the plaintiffs have sustained their allegation of a constructive trust. Thus, it becomes necessary to treat in detail the cases cited by the defendants, as they bear largely upon the doctrine of an express trust.
The learned witnesses for the defense, Judge Jones (former ChiefJustice of the State Supreme Court), and Mr. Marion of South Carolina, based their testimony, in the main, as to the law of their state, upon the assumption that an express trust had been alleged and set up in the complaint. But in the construction of the pleadings, (41) our new law, the lex fori, is to govern (31) Cyc. 45); and with us a liberal construction must be given in favor of the pleader, "with a view to substantial justice between the parties." C. S., 535;Hartsfield v. Bryan, 177 N.C. 166. We think the facts alleged are sufficient to establish a constructive trust. McFarland v. Harrington,178 N.C. 191; Rush v. McPherson, 176 N.C. 562; 26 R. C. L., 1232. It was conceded by the defendants' witnesses that, with respect to the doctrine of constructive trusts, the law of South Carolina is not materially different from that announced by this Court in Avery v. Stewart,supra, and other cases to like import.
Holding, as we do, that the instruction on the first issue was correct, whether tested by the law of this State or by the law of South Carolina, it follows that the remaining exceptions, which group themselves *Page 44 
principally about this pivotal question, must be overruled. To consider them seriatim would only entail a repetition in part of what has already been said.
There is one exception of a different nature, however, which calls for further discussion. We quote from the record: "During the taking of the testimony, pending argument as to the competency of certain questions and answers and explanations offered by the witness P. C. Whitlock, the court, in the presence and hearing of the jury, asked the question whether the witness was appearing as attorney or as a witness, stating that the court was just at this point unable to see." To the foregoing remark of the trial judge the defendant excepts, which is defendant's fifteenth exception.
Some difficulty has been experienced in arriving at a satisfactory conclusion as to what disposition should be made of this exception and assignment of error. But as it does not appear with certainty that the defendants have been prejudiced, or disadvantageously circumstanced before the jury, by the remarks of the judge, we must overrule the motion for a new trial based upon this portion of the record. "Appellant must show error; we will not presume it, but he must make it appear plainly, as the presumption is against him." In re Smith's Will, 163 N.C. 464, See, also, 1 Michie Digest 695, and authorities collected under title, "Burden of Showing Error."
We are not unmindful of the recent decisions of Morris v. Kramer,182 N.C. 87; Chance v. Ice Co., 166 N.C. 495; and others to like effect. And it will be conceded that the instant exception, viewed from one standpoint, may be in the twilight zone, bordering near the line of reversible error; but we are not satisfied or convinced that the facts presented are sufficient to bring it under the doctrine announced in (42) these late cases. On the other hand, it would seem that the ruling adopted in S. v. Browning, 78 N.C. 555, "unless it appear with ordinary certainty that the rights of the defendants have been prejudiced in some way by the remarks, or conduct of the court, it cannot be treated as error," is more nearly applicable to the case at bar. The record shows that counsel for plaintiffs were examining the witness with respect to certain interest calculations. He answered the questions about figuring the interest on the debt of $34,000; and further, without any question being asked, volunteered a statement in regard to the home place, which was not in controversy. Continuing, and of his own volition, the witness proceeded to comment on the statement of 19 April, 1919, saying: "The inference is attempted to be drawn here, as I understand it, that this is an accounting between the American Trust Company and Mr. McNinch." Here the attorney for the plaintiffs *Page 45 
interrupted him with the question: "After figuring over the interest, if you please, I would like for you to first answer my question." Then followed argument as to the right of the witness to make his explanation, in which the witness himself joined; and it was during this argument, and not while he was testifying, that the court asked the question of which defendants complain, evidently meaning that if Mr. Whitlock were making his explanation and arguments as an attorney the court would listen to them, but, if as a witness, he would have to confine himself to the questions propounded. At least, such appears to be the more reasonable interpretation of the judge's inquiry and comment.
In S. v. Robertson, 121 N.C. 551, it was said: "It devolves upon the party complaining to show that the court has in some way expressed an opinion on the facts, and that it is prejudicial to him, or that it must be reasonably inferred that he was prejudiced thereby." Again, in S. v.Brabham, 108 N.C. 793: "Remarks by the court of doubtful propriety are not ground for exception, where it appears they did no harm to the defendant." There must be some clear proof, sufficient to overcome the opposite presumption, that an unfair effect was likely to be produced and was accomplished by what transpired, before it can be considered a violation of the statute. S. v. Jones, 67 N.C. 285. And to like effect are the following: McDonald v. McArthur, 154 N.C. 11; Williams v. Lumber Co.,118 N.C. 928; S. v. Dick, 60 N.C. 440; S. v. Nat, 51 N.C. 114; S. v. Angel,29 N.C. 27.
After a careful and painstaking investigation of the record, no ruling has been found which we apprehend should be held for reversible error; and this will be certified to the Superior Court.
No error.
Cited: Spence v. Pottery Co., 185 N.C. 226; Pridgen v. Pridgen,190 N.C. 105; Nye v. Williams, 190 N.C. 133; Hambley v. White, 192 N.C. 35;Cole v. Shelton, 194 N.C. 742; Wood v. Bank, 199 N.C. 373; Insurance Co. v.Totten, 203 N.C. 433; Ollis v. Ricker, 203 N.C. 672; Gold v. Kiker,218 N.C. 208; Belk's Dept. Store v. Guilford, 222 N.C. 454; Atkinson v.Atkinson, 225 N.C. 127; Call v. Stroud, 232 N.C. 480; Miller v. Bank,234 N.C. 318; McKinley v. Hinnant, 242 N.C. 253. *Page 46 
(43)