Q.C. MEARES, JR., AS AN HEIR AT LAW OF MARY JANE MEARES, DECEASED, PLAINTIFF V. WARREN JERNIGAN, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF MARY JANE MEARES, DEFENDANT

No. COA99-869

(Filed 6 June 2000)

**Estate Administration— qualification—willful misconduct**

In this declaratory judgment action where plaintiff sought a determination that defendant has forfeited any right to inherit from decedent or to administer her estate based on abandonment, the trial court did not err in granting summary judgment in favor of defendant because plaintiff cannot produce evidence to support the essential element of willful conduct.

Appeal by plaintiff from order entered 4 March 1999 by Judge William C. Gore, Jr., in Columbus County Superior Court. Heard in the Court of Appeals 10 May 2000.

MEARES v. JERNIGAN

[138 N.C. App. 318 (2000)]

*Lee & Lee, by Junius B. Lee, III, for plaintiff-appellant.*

*Williamson & Walton, L.L.P., by C. Greg Williamson, for defendant-appellee.*

MARTIN, Judge.

Plaintiff, the son of Mary Jane Meares, deceased, brought this action seeking a declaratory judgment that defendant has forfeited any right to inherit from Mary Jane Meares or to administer her estate. Plaintiff alleged that defendant, who was married to Mary Jane Meares at the time of her death on 30 January 1998, had actually and constructively abandoned Mary Jane Meares and that defendant had intentionally or negligently "hastened and brought about her death." Defendant filed an answer in which he denied the allegations of the complaint.

Subsequently, defendant moved for summary judgment, supported by his own affidavit, the affidavits of his two nieces, and an affidavit of Mary Jane Meares' sister. The affidavits, briefly summarized, tended to show that defendant and Mary Jane Meares had been close friends during their school days in the 1930s and 1940s. When defendant returned from service in World War II, Mary Jane Meares had married. Her husband died in 1988 and she and defendant renewed their friendship. They were married on 14 August 1991. Both were insulin dependent diabetics, but both were physically able and mentally competent to care for themselves and their residence until Christmas Day 1997, when Mary Jane became ill. Defendant took her to a hospital on 26 December 1997, where she was examined and released to return home. She did not improve and, a few days later, Mary Jane was admitted to the hospital. Defendant was told that she had suffered a series of strokes, and she became unable to speak. Defendant stayed with her at the hospital nearly constantly. Her condition did not improve and, in January 1998, defendant arranged for her to be admitted to a rehabilitation center in Florence, South Carolina. On the day after Mary Jane's admission to the rehabilitation center, defendant became ill and was hospitalized for several days. After his release from the hospital, he stayed at the home of his niece and was physically unable to visit Mary Jane on a regular basis. After she was hospitalized for the last time in Florence, he visited her on 28 January 1998, two days before her death.

Plaintiff responded with his own affidavit and with an affidavit of his wife. Their affidavits tended to show that on Christmas Day, 1997,

Mary Jane Meares was disoriented, unable to walk without assistance, and "very nearly comatose," but that defendant refused to permit plaintiff to take her to a doctor. On 30 December 1997, plaintiff and his wife attempted to talk to Mary Jane, but defendant refused to permit them to do so. The following day, plaintiff and his wife went to the residence where Mary Jane lived with the defendant, found the house filthy and roach infested, and observed Mary Jane sitting in her own feces and urine, with food particles on her face and clothing. Defendant was present, but had made no attempt to care for Mary Jane. Plaintiff and his wife insisted that defendant take Mary Jane to a physician, who admitted her to the hospital. On or about 10 January 1998, defendant removed his belongings from the marital home and began living with his niece in South Carolina. Neither plaintiff nor his wife ever saw defendant visit Mary Jane at the rehabilitation center, and he visited her only once, briefly, during her final hospitalization.

The record reflects that plaintiff stipulated to the entry of summary judgment dismissing his claim for relief. The trial court granted summary judgment in favor of defendant as to plaintiff's first claim for relief. Plaintiff appeals.

---

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C.R. Civ. P. 56(c). The evidence, and all reasonable inferences which may be drawn from it, must be considered in the light most favorable to the party opposing the motion. *Holley v. Burroughs Wellcome Co.*, 318 N.C. 352, 348 S.E.2d 772 (1986). The moving party has the burden of showing the absence of a triable issue and may do so by showing that an essential element of the opposing party's claim is nonexistent, or that the opposing party cannot produce evidence to support an essential element of the claim. *Pine Knoll Association, Inc. v. Cardon*, 126 N.C. App. 155, 484 S.E.2d 446, *disc. review denied*, 347 N.C. 138, 492 S.E.2d 26 (1997).

G.S. § 31A-1 provides, *inter alia:*

(a) The following persons shall lose the rights specified in subsection (b) of this section:

. . .

(3) A spouse who wilfully and without just cause abandons and refuses to live with the other spouse and is not living with the other spouse at the time of such spouse's death;

. . .

(b) The rights lost as specified in subsection (a) of this section shall be as follows:

. . .

(1) All rights of intestate succession in the estate of the other spouse . . . .

The overriding policy behind this act is that no one should benefit from his own wrongdoing, G.S. § 31A-15, but the wrongful conduct must be more than negligent. See *Wilson v. Miller*, 20 N.C. App. 156, 160, 201 S.E.2d 55, 58 (1973) ("negligence is not one of the grounds for forfeiture of marital rights as set out in G.S. § 31A-1."). Wilful abandonment, like the other conduct constituting grounds for the forfeiture of spousal rights under G.S. § 31A-1, requires an intentional act.

[O]ne spouse abandons the other, . . . , where he or she brings their cohabitation to an end without justification, without the consent of the other spouse and without intent of renewing it. . . . One spouse may abandon the other without physically leaving the home . . . . The constructive abandonment by the defaulting spouse may consist of affirmative acts of cruelty or of a wilful failure [to provide support] (citations omitted).

*Powell v. Powell*, 25 N.C. App. 695, 699, 214 S.E.2d 808, 811 (1975).

Even taking plaintiff's affidavits as true, and viewing all of the other evidence in the light most favorable to him, there is no evidence sufficient to support a finding of wilful abandonment of Mary Jane Meares by defendant. There is no evidence of any intent by defendant to cease, and not renew, his cohabitation with Mary Jane Meares, nor is there evidence of affirmative acts of cruelty by him or his wilful failure to provide for her. To the contrary, all of the evidence regarding the relationship between the spouses showed that defendant had every intent to continue with the marital relationship, and that any failure to care for, or cohabit with, Mary Jane Meares was due to the advanced age and deteriorating health of both spouses. Thus, plaintiff cannot produce evidence to support the essential element of wilful

conduct necessary to make out a case of abandonment and summary judgment was properly granted in favor of defendant.

Affirmed.

Judges WYNN and SMITH concur.