IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1097

Filed: 21 July 2020

Wilson County, No. 16-E-65

IN THE MATTER OF THE ESTATE OF JOHN TIMOTHY MEETZE, Deceased.

Appeal by Petitioner from order entered 3 September 2019 by Judge Marvin K. Blount, III, in Wilson County Superior Court. Heard in the Court of Appeals 9 June 2020.

*Batts, Batts & Bell, LLP, by Michael R. Smith, Jr., and Benjamin D. Carter, for Petitioner-Appellant.*

*Narron & Holdford, P.A., by Ben L. Eagles, for Respondents-Appellees.*

INMAN, Judge.

Petitioner-Appellant Candee Able Peacock ("Ms. Peacock"), who applied for and received an assignment and a deficiency judgment for her spousal year's allowance from an assistant clerk with the Wilson County Superior Court, appeals an order of the superior court: (1) affirming the Wilson County Clerk of Superior Court's decision to re-date the assignment and deficiency judgment, thereby renewing Respondent-Appellees Jordan Lynn Batchelor's and Blair Nicole Batchelor's (the "Batchelors") time to appeal them to the superior court; and (2) disqualifying Ms.

Peacock from receiving her spousal allowance under N.C. Gen. Stat. § 31A-1(a) (2019). After careful review, we reverse the trial court's order.

## I. FACTUAL AND PROCEDURAL HISTORY

The record below discloses the following:

Ms. Peacock and John Timothy Meetze ("Decedent") were married in South Carolina on 13 April 1997. Decedent physically abused Ms. Peacock throughout the marriage. On 23 April 1998, Decedent physically assaulted Ms. Peacock and caused multiple injuries that required medical attention. Ms. Peacock fled the home that day, beginning what would become a years-long separation. Ms. Peacock also sought a Domestic Violence Protective Order against Decedent, which was granted by a South Carolina court on 4 May 1998.

Ms. Peacock filed for divorce in South Carolina later that year. Decedent then sent a letter from prison to Ms. Peacock's lawyer stating he still loved his wife and would be contesting the divorce. As a result of the letter, Ms. Peacock dropped the divorce proceeding. Ms. Peacock saw Defendant for the last time in a South Carolina courtroom in 1999 but had no further contact with him.

Decedent and Ms. Peacock remained separated and both entered other relationships between 1999 and Decedent's death in January 2016. Ms. Peacock had sexual relationships and cohabitated with at least two other men, while Decedent

purported to marry Carol Burgess Meetze ("Ms. Burgess") on 4 August 2001. Burgess was unaware that Decedent was still married to Ms. Peacock.

Ms. Peacock filed a second divorce action in Virginia in December of 2015. Decedent passed away the following month and Ms. Peacock voluntarily dismissed her divorce action.

On 29 January 2016, Ms. Burgess filed an application for and was assigned the spousal year's allowance by the Wilson County Clerk of Superior Court. On 5 February 2016, however, Decedent's son from a previous marriage filed a motion to set aside the assignment of the year's allowance to Ms. Burgess because Decedent was still married to Ms. Peacock at the time of his death. On 15 February 2016, while Decedent's son's motion was still pending, Ms. Peacock filed with the Clerk her own application for the spousal year's allowance. She also joined the motion to set aside the assignment to Ms. Burgess. The trial court later set aside the assignment of the year's allowance to Ms. Burgess after declaring the marriage void, and, in July 2017, this Court affirmed that order. *In re Estate of Meetze*, 254 N.C. App. 610, 802 S.E.2d 916, 2017 WL 3027483 (2017) (unpublished). Following that decision, the Batchelors—the children of Decedent's godmother—filed Decedent's purported Last Will and Testament, which named them as beneficiaries and voided any gifts to Ms. Burgess.

Despite her filing of the application on 15 February 2016 and this Court's subsequent ruling setting aside Ms. Burgess's spousal allowance, Ms. Peacock's application for the year's allowance sat unresolved in the Clerk's office until 15 February 2019, when an assistant clerk allowed the application and assigned the year's allowance to Ms. Peacock (the "Assignment"). The assistant clerk also entered a deficiency judgment for the full amount of the allowance because funds in Decedent's estate were insufficient to pay it (the "Deficiency Judgment"). In reviewing the Assignment, the assistant clerk believed it had been erroneously left unsigned on 15 February 2016. So, she dated her signature on the Assignment 15 February 2016. The assistant clerk dated the Deficiency Judgment 15 February 2019 consistent with the date she actually signed.

The backdating of the Assignment was brought to the attention of Wilson County's elected Clerk of Superior Court (the "Clerk") sometime after its entry and, on 1 April 2019, the Clerk heard arguments from counsel for the parties concerning whether the assistant clerk correctly dated the Assignment and the Deficiency Judgment. The Clerk determined that the Assignment was signed by the assistant clerk on 15 February 2019 but was "mistakenly" dated 15 February 2016. As a result, the Clerk entered an order on 4 April 2019 re-dating the entry of the Assignment and Deficiency Judgment to 4 April 2019 (the "Clerk's Order"). In that order, the Clerk concluded that such relief was authorized pursuant to Rule 60 of the North Carolina

Rules of Civil Procedure without specifying which specific subsection of the Rule applied.

Following the entry of the Clerk's Order, the Batchelors and Ms. Burgess filed a motion to set aside the Assignment and Deficiency Judgment and a Notice of Appeal to superior court. Ms. Peacock also filed a Notice of Appeal, as well as a motion challenging Ms. Burgess's standing to appeal, a motion to stay proceedings, and an answer to the motion to set aside the Assignment and Deficiency Judgment.

On 22 July 2019, the trial court heard the parties' appeals. At the hearing, the assistant clerk testified about backdating the Assignment. The assistant clerk explained that she backdated the Assignment because she believed it was supposed to have been signed concurrent with the filing of Ms. Peacock's application on 15 February 2016 as a matter of rote procedure, and assumed in 2019 that it went unsigned by simple oversight.

Ms. Peacock also testified at the hearing, describing in detail the abuse and injuries she suffered at Decedent's hands. The court received photographs of her injuries into evidence, as well as a transcript of the domestic violence protection hearing in which she described her injuries for the South Carolina court. Ms. Peacock further testified that Decedent continued to harass her by phone after they separated, that she stayed away for fear of her personal safety, and that she did not try to get

back together with Decedent because she "d[id]n't think [she]'d be sitting here today if [she] would have."

In an order dated 3 September 2019, the trial court granted Ms. Peacock's motion to dismiss Ms. Burgess's appeal, concluding she lacked standing because her marriage to Decedent was void. The trial court also affirmed the Clerk's re-dating of the Assignment and Deficiency Judgment based on Rule 60 of the North Carolina Rules of Civil Procedure. Finally, the trial court granted the Batchelor's motion to set aside the Assignment and Deficiency Judgment pursuant to N.C. Gen. Stat. § 31A-1. Although the trial court found that Ms. Peacock "involuntarily and unwilfully separated from [Decedent]," it also determined that, "[b]ased upon the passage of time between [the] involuntary separation . . . to include [Ms.] Peacock's prior divorce filings as well as lack of contact between the parties, Ms. Peacock did willfully and without cause abandon [Decedent]." Ms. Peacock timely appealed.

## II. <u>ANALYSIS</u>

Ms. Peacock presents two principal arguments on appeal: (1) the trial court erred in concluding that the Clerk was authorized under Rule 60 to amend the dates of entry of the Assignment and Deficiency Judgment to 4 April 2019; and (2) if the Clerk did possess that authority, the trial court erred in concluding that Ms. Peacock willfully and without just cause abandoned Decedent such that she was disqualified from receiving her spousal year's allowance. We address each argument in turn.

## A. Standards of Review

"The personal representative, or the surviving spouse, or child by the child's guardian or next friend, or any creditor, devisee, or heir of the deceased, may appeal" *de novo* a clerk of court's ruling regarding spousal allowance to superior court. N.C. Gen. Stat. § 30-23; *see also* N. C. Gen. Stat. § 1-301.2 (2019) (providing for *de novo* review of such an appeal to superior court). On appeal to this Court, "[u]nchallenged findings of fact 'are presumed to be supported by competent evidence and are binding on appeal.'" *In re Estate of Harper*, ___ N.C. App. ___, ___, 837 S.E.2d 602, 604 (2020) (quoting *In re Estate of Warren*, 81 N.C. App. 634, 636, 344 S.E.2d 795, 796 (1986). Conclusions of law are subject to *de novo* review. *In re Estate of Peacock*, 248 N.C. App. 18, 21, 788 S.E.2d 191, 194 (2016).

Relief under Rule 60(a) is limited to the "correction of clerical errors, [and] it does not permit the correction of serious or substantial errors." *Buncombe Cty. By and Through Child Support Enf't Agency ex rel. Andres v. Newburn*, 111 N.C. App. 822, 825, 433 S.E.2d 782, 784 (1993) (citation omitted). A trial court's order correcting a clerical error under Rule 60(a) is subject to the abuse of discretion standard. *Id.* A trial court abuses its discretion and enters an order outside the scope of the Rule "when it alters the effect of the original order." *Id.* (citation omitted). Relief under Rule 60(b) is also left to the discretion of the trial court, and its determination "will not be disturbed absent: (1) an abuse of discretion; and/or (2) a trial court's

misapprehension of the appropriate legal standard for ruling on a Rule 60(b) motion." *Pope v. Pope*, 247 N.C. App. 587, 590, 786 S.E.2d 373, 376-77 (2016) (quotation marks and citation omitted).

## B. *Rule 60*

Rule 60 provides relief from a final judgment or order. N.C. Gen. Stat. § 1A-1, Rule 60 (2019). It provides two paths—Rule 60(a) and Rule 60(b)—by which a party may modify a final judgment or order without entering an appeal. *Id.* The former permits a judge to correct clerical mistakes in judgments resulting from an oversight or omission, N.C. Gen. Stat. § 1A-1, Rule 60(a), while the latter provides "a grand reservoir of equitable power by which a court may grant relief from a judgment whenever extraordinary circumstances exist and there is a showing that justice demands it." *Barnes v. Calvary Homes*, 148 N.C. App. 397, 400, 559 S.E.2d 246, 248-49 (2002) (internal quotation marks and citation omitted).

"A clerical error is [a]n error resulting from a minor mistake or inadvertence, esp[ecially] in writing or copying something on the record, and not from judicial reasoning or determination." *In re D.D.J.*, 177 N.C. App. 441, 444, 628 S.E.2d 808, 811 (2006) (quotation marks and citations omitted) (additional alterations in original). *See also Rudder v. Rudder*, 234 N.C. App. 173, 179, 759 S.E.2d 321, 326 (2014) (identifying a clerical error when a trial court inadvertently checked the incorrect box on a preprinted form). The judge may correct the error "on his own

initiative or on the motion of any party after such notice, if any, as the judge orders."

N.C. Gen. Stat. § 1A-1, Rule 60(a). However, the judge does not have the power to

make a correction affecting the substantive rights of the parties. *Food Serv.*

*Specialists, Inc. v. Atlas Restaurant Mgmt., Inc.*, 111 N.C. App. 257, 259, 431 S.E.2d

878, 879 (1993).

*Food Service Specialists, Inc.* is instructive. There, a trial judge entered a

judgment on 13 December 1991, but the judgment was inadvertently dated

incorrectly as having been entered on 2 October 1991. *Id.* at 258, 431 S.E.2d at 879.

The trial court identified the clerical error and changed the judgment date to 21

January 1992. *Id.* We held that the trial court's order exceeded the parameters of

Rule 60(a):

> By changing the incorrect date of entry of judgment (2
> October 1991) to a date other than 13 December 1991, the
> actual date judgment was entered, the trial court
> improperly altered the substantive rights of the parties by
> extending the period in which the parties could file a timely
> notice of appeal. Rule 60(a) does not vest the trial court
> with such authority.

*Id.* at 259-60, 431 S.E.2d at 880.

Based on a straightforward application of *Food Service Specialists, Inc.*, Ms.

Peacock is correct that the Clerk (and the trial court in affirming the Clerk's order on

appeal) could not rely on Rule 60(a) to re-date the Assignment and Deficiency

Judgment to 4 April 2019. In making that modification, the Clerk worked a

substantial change by renewing the time in which the Batchelors could appeal those orders. *Id.* Such a result is plainly prohibited under Rule 60(a) and *Food Service Specialists, Inc.*, and we hold that any reliance on that Rule by the Clerk and trial court constitutes error.

As for Rule 60(b), neither the Clerk nor the trial court indicated whether relief was proper under that Rule and, if so, which subsection of the Rule applied. Given that the parties are in apparent agreement that Rules 60(b)(1) and 60(b)(6) are the only provisions that apply,[1] we review whether the trial court abused its discretion in affirming the re-dating of the Assignment and Deficiency Judgment for the assistant clerk's "[m]istake," N.C. Gen. Stat. § 1A-1, Rule 60(b)(1), or "[a]ny other reason justifying relief from the operation of the judgment," N.C. Gen. Stat. § 1A-1, Rule 60(b)(6).

Assuming *arguendo* that the Clerk could grant relief under Rule 60 without a motion from either party, the assistant clerk's mistake in this case does not fall within the ambit of Rule 60(b)(1). "To set aside a judgment based upon mistake, the moving party must prove mutual mistake or that a unilateral mistake was made because of some misconduct[,]" *Griffith v. Curtis*, 205 N.C. App. 462, 465, 696 S.E.2d 701, 703 (2010), and nothing in the record suggests that the assistant clerk's unilateral

---

[1] In her appellate brief, Ms. Peacock contends that neither subsection supports the trial court's order. The Batchelors do not argue from any specific subsection, but instead contend that the Clerk was correcting a "mistake" on the part of the assistant clerk in order to effectuate an equitable result.

mistake in backdating her signature on the Assignment was the result of impropriety. Indeed, the trial court found that the assistant clerk backdated the Assignment because "she thought it was the proper thing to do and there was no ill will on [her] part." The Clerk, therefore, could not grant relief for the assistant clerk's unilateral mistake under Rule 60(b)(1).

The Batchelors contend that equity required re-dating the Assignment and Deficiency Judgment under Rule 60(b)(6), which is available only upon "a showing (1) that extraordinary circumstances exist and (2) that justice demands relief." *Thacker v. Thacker,* 107 N.C. App. 479, 481, 420 S.E.2d 479, 480 (1992) (citations omitted). Specifically, they argue—without citation to any authority—that the assistant clerk deprived them of their statutory right to appeal within ten days by backdating the Assignment to 2016, and that renewing their time to appeal by re-dating the Assignment and Deficiency Judgment to 4 April 2019 was necessary to vindicate that right. We disagree. The backdating of the Assignment had no impact on the Batchelors' right to appeal. That is because regardless which artificial date the assistant clerk or the trial court determined was appropriate for the Assignment— three years earlier or three weeks later—the period for the Batchelors to appeal expired on 25 February 2019, ten days after the assistant clerk actually signed it.

N.C. Gen. Stat. § 30-23 provides that a decedent's heirs may appeal an assignment of the spousal year's allowance "within 10 days after the assignment, and

the appeal shall be heard as provided in [N.C. Gen. Stat. §] 1-301.2." That statute, in turn, provides that "a party aggrieved by an order or judgment of a clerk that finally disposed of a special proceeding, may, within 10 days *of entry of the order or judgment*, appeal to the appropriate court for a hearing de novo." N.C. Gen. Stat. § 1-301.2(e) (emphasis added). Under our Rules of Civil Procedure, "a judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court." N.C. Gen. Stat. § 1A-1, Rule 58 (2019). Here, although the assistant clerk dated her signature on the Assignment 15 February 2016, both parties acknowledge that the Assignment and Deficiency Judgment were actually "reduced to writing, signed by the [clerk], and filed" on 15 February 2019. *Id.* As a result, the Assignment and Deficiency Judgment were entered on that date,[2] and the Batchelors had ten days thereafter, or until 25 February 2019, to file any appeal. N.C. Gen. Stat. §§ 30-23, 1-301.2(e). In other words, the assistant clerk's error in misdating her signature on the

---

[2] The parties do not discuss on appeal whether the Assignment was entered *nunc pro tunc*. We note, however, that "*Nunc pro tunc* orders are allowed only *when a judgment has been actually rendered, or decree signed*, but not entered on the record, in consequence of accident or mistake or the neglect of the clerk . . . ." *Long v. Long*, 102 N.C. App. 18, 21-22, 401 S.E.2d 401, 403 (1991) (emphasis added) (citation and quotation marks omitted). Here, the assistant clerk testified that she believed the Assignment should have been signed in 2016 but was not, and the record discloses that Ms. Peacock's application was not passed upon until the assistant clerk reviewed and signed the Assignment in 2019. We therefore decline to treat the Assignment as entered *nunc pro tunc* 15 February 2016.

Assignment in no way deprived the Batchelors of their right to appeal within ten days of its actual entry on 15 February 2019.[3]

With the Batchelors suffering no injury from the assistant clerk's backdating of the Assignment, nothing supports employing Rule 60(b)(6) to amend the Assignment's and Deficiency Judgment's dates of entry. The Batchelors were not entitled to notice of the Assignment, *In re Estate of Archibald*, 183 N.C. App. 274, 277, 644 S.E.2d 264, 266 (2007), and any expiration of the ten-day timeframe to appeal was the result of inaction on their part.[4] Under these facts,[5] the Batchelors have not made the required showing under Rule 60(b)(6) "(1) that extraordinary circumstances exist and (2) that justice demands relief." *Thacker*, 107 N.C. App. at 481, 420 S.E.2d at 480 (citations omitted).

The parties identify no other bases for the Clerk's decision to re-date the Assignment and Deficiency Judgment. Because the relief requested by the

---

[3] At oral argument, the Batchelors' counsel posed that if he had filed a notice of appeal within ten days of the unamended, backdated Assignment, their appeal would have been dismissed as untimely or otherwise unreviewable due to an erroneous record. Such speculation does not alter our holding; just as Ms. Peacock's motion to dismiss Ms. Burgess's appeal for lack of standing was argued at the hearing before the trial court, so too would any motion to dismiss a timely appeal by the Batchelors. Given the parties' agreement that the Assignment was actually signed and dated 15 February 2019 and the availability of the assistant clerk to testify—either in person or by affidavit—to the time of the Assignment's entry, we decline to address the Batchelors' hypothetical argument.

[4] At trial and oral argument on appeal, counsel for the Batchelors acknowledged that his clients did not discover the Assignment and Deficiency Judgments had been entered until more than 10 days after 15 February 2019.

[5] Because "the remedy provided by Rule 60(b)(6) is equitable in nature[,]" *Thacker*, 107 NC. App. at 482, 420 S.E.2d at 480, and "[e]quity . . . will so mold its decrees as to fit the exigencies of each particular case[,]" *McNinch v. American Trust Co.*, 183 N.C. 36, 42-43, 110 S.E. 663, 667 (1922), we limit our holding to the particular facts of this case.

Batchelors falls outside the scope of Rules 60(a), 60(b)(1), and 60(b)(6), we hold that the Clerk—and the trial court on *de novo* review—abused their discretion in re-dating the Assignment and Deficiency Judgment to 4 April 2019. As a result, the Batchelors failed to timely prosecute their appeal of those orders, and we vacate the trial court's order for lack of jurisdiction. *See Spalding Division of Questor Corp. v. DuBose*, 46 N.C. App. 612, 613-14, 265 S.E.2d 501, 503 (1980) (holding under a predecessor to N.C. Gen. Stat. § 1-301.2 that "[t]he appeal must be taken within ten days after the clerk's judgment to entitle the judge of superior court to review the ruling. There must be an appeal from the clerk's judgment to give the superior court jurisdiction. The superior court does not acquire jurisdiction where there is no appeal from the clerk's judgment." (citations omitted)); *cf. In re C.M.H.*, 187 N.C. App. 807, 809, 653 S.E.2d 929, 930 (2007) ("In the absence of subject matter jurisdiction, the trial court's order is void and should be vacated." (citation and quotation marks omitted)). And, because the Assignment was "a clerk's order that [was] not timely appealed[, it] 'will stand as a judgment of the court[.]' " *In re Thompson*, 232 N.C. App. 224, 227, 754 S.E.2d 168, 171 (2014) (quoting *In re Atkinson-Clark Canal Co.*, 234 N.C. 374, 377, 67 S.E.2d 276, 278 (1951)).

## B. *Willful Abandonment Without Just Cause*

Assuming *arguendo* that the Clerk could properly re-date the Assignment and Deficiency Judgment to 4 April 2019, we further hold that the trial court erred in

concluding that Ms. Peacock willfully and without just cause abandoned Decedent within the meaning of N.C. Gen. Stat. § 31A-1. Under that statute, "[a] spouse who [1] willfully and [2] without just cause [3] abandons and refuses to live with the other spouse and [4] is not living with the other spouse at the time of such spouse's death" is prohibited from receiving the spousal year's allowance. N.C. Gen. Stat. § 31A-1(a)(3).[6]

On *de novo* review, the trial court made the following findings of fact and conclusions of law pertinent to our analysis:

> 3. Candee Able Peacock involuntarily and unwilfully separated from John Timothy Meetze on April 23, 1998, following John Timothy Meetze's acts of domestic violence committed against Candee Able Peacock, never to be reunited with John Timothy Meetze again prior to his death.
>
> . . . .
>
> 5. After separating from John Timothy Meetze, and prior to the death of John Timothy Meetze, Candee Able Peacock lived in adulterous relationships.
>
> 6. Based upon the passage of time between Candee Able Peacock's involuntary separation from John Timothy Meetze, to include Candee Able Peacock's prior divorce

---

[6] Respondents argue that subsection (a)(2) of the statute also applies, which bars a spouse who "voluntarily separates from the other spouse and lives in adultery and such has not been condoned[.]" N.C. Gen. Stat. § 31A-1(a)(2). However, the trial court expressly found that Ms. Peacock "involuntarily and unwilfully separated from [Decedent]." The trial court then reiterated its finding of "involuntary separation" before concluding, in the language of subsection (a)(3), that Ms. Peacock "did willfully and without just cause abandon [Decedent]." Based on the trial court's order, which did not make the necessary finding of voluntary separation consistent with subsection (a)(2), we limit our review to whether the trial court correctly concluded Ms. Peacock abandoned Decedent without just cause under subsection (a)(3).

> filings as well as lack of contact between the parties, Candee Able Peacock did willfully and without cause abandon John Timothy Meetze.

Ms. Peacock does not directly challenge any specific findings on appeal; she does, however, contend that the trial court erred in concluding she "willfully and without cause abandoned" Decedent. Given the nature of Ms. Peacock's particular argument on appeal—and the dearth of precedent on the question—we must first determine whether and to what extent the trial court's determination that she willfully and without just cause abandoned Decedent is a finding of fact or conclusion of law.

Marital abandonment occurs when a spouse "brings their cohabitation to an end without justification, without the consent of the other spouse and without intent of renewing it." *Panhorst v. Panhorst*, 277 N.C. 664, 671, 178 S.E.2d 387, 392 (1971) (citation omitted).[7] Intent to abandon is a factual finding. *Cf. In re Adoption of Searle*, 82 N.C. App. 273, 276, 346 S.E.2d 511, 514 (1986) (construing "willful[] abandon[ment]" under an adoption statute and holding "[w]hether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence" (citation omitted)). However, "[a]bandonment is a legal conclusion."

---

[7] *Panhorst* provided this definition for willful abandonment under a now repealed statute, N.C. Gen. Stat. § 50-16.2, which applied the term within the context of divorce and alimony actions. However, in more recent decisions, this Court has used *Panhorst's* definition to define willful abandonment under N.C. Gen. Stat. 31A-1(a)(3). *See Meares v. Jernigan*, 138 N.C. App. 318, 321, 530 S.E.2d 883, 885 (2000) (applying the same definition from *Panhorst* to an action under N.C. Gen. Stat. § 31A-1(a)(3)); *In re Estate of Hendrick*, 231 N.C. App. 170, 753 S.E.2d 740, 2013 WL 6237353 (2013) (unpublished) (relying on *Panhorst* in evaluating a party's challenge to an assignment of spousal year's allowance on grounds of willful abandonment without just cause).

*Patton v. Patton*, 78 N.C. App. 247, 251, 337 S.E.2d 607, 609 (1985), *rev'd on separate grounds*, 318 N.C. 404, 348 S.E.2d 593 (1986) (discussing the statutorily-undefined term abandonment in application of now-repealed N.C. Gen. Stat. § 50-16.2 examined in *Panhorst*). *See also In re Estate of Lunsford*, 359 N.C. 382, 387-88, 610 S.E.2d 366, 370 (2005) (holding, in a case examining whether a mother was barred from intestate succession rights to her child's estate for willful abandonment under N.C. Gen. Stat. § 31A-2, that an unchallenged finding of willfulness was a binding finding of fact on appeal but that the issue of "abandon[ment]" within the meaning of the statute was a question of law subject to *de novo* review). Whether the abandonment is accomplished "without just cause" also constitutes a conclusion of law. *See Patton*, 78 N.C. App. at 253, 337 S.E.2d at 611 (reviewing findings as to a husband's specific conduct and holding "[t]hese findings receive support from evidence in the record and are, in our opinion, sufficient to support a conclusion that the husband abandoned the wife without just cause or provocation").[8]

Our courts have addressed the legal conclusion of abandonment in other contexts. In *Eggleston v. Eggleston*, 228 N.C. 668, 47 S.E.2d 243 (1948), which involved issues of alimony, our Supreme Court described how the concept of abandonment relates to abuse and physical threats between spouses:

---

[8] Whether a party has acted with "just cause" is also treated as a legal conclusion in other areas of the law. *See, e.g.*, *N.C. Dep't of Corr. v. Myers*, 120 N.C. App. 437, 462 S.E.2d 824 (1995) (recognizing that whether just cause existed to demote an employee was a conclusion of law).

> *When the husband by cruel treatment renders the life of the wife intolerable or puts her in such fear for her safety that she is compelled to leave the home, the abandonment is his, not hers.* Although the conduct of the spouse may such as to create a cause of action [for divorce] it may be condoned, or forgiven by the injured party, and become no longer a justiciable grievance. But a renewal of the misconduct may such as to wipe out the condonation, revive the former offense, and restore its effectiveness in an action for relief.

228 N.C. at 679, 47 S.E.2d at 250 (citation omitted) (emphasis added).

Here, the trial court determined that Decedent's spousal abuse caused Ms. Peacock to "involuntarily and unwilfully separate[] from [Decedent] . . . following [his] acts of domestic violence," but—by virtue of Ms. Peacock's divorce filings, lack of contact, and the passage of time—nonetheless concluded that she had abandoned Decedent without just cause. **[R p 115]** We hold that those findings do not support the conclusion reached by the trial court that Ms. Peacock abandoned Decedent. Based on the finding of domestic violence, and consistent with the concept of abandonment expressed in *Eggleston*, Decedent abandoned Ms. Peacock. *Id.* at 679, 47 S.E.2d at 250. There was no evidence or finding from the trial court that Ms. Peacock "condoned, or [had] forgiven" Decedent such that the abuse was "no longer a justifiable grievance." *Id.* To the contrary, Ms. Peacock testified Decedent continued harassing her and her family after she left the home and that, at the time of the hearing, she "d[id]n't think [she]'d be sitting here today if [she] would have [resumed relations]."

Nor does the passage of time, the divorce filings, or the lack of contact standing alone—*i.e.*, without steps by Decedent to rehabilitate his conduct—convert Decedent's abandonment into Ms. Peacock's. To hold otherwise would invert the common-sense notion that as between the abuser and the abused, the onus of reconciliation is on the former, not the latter. Thus, to the extent that Ms. Peacock's divorce filings indicate a willful desire to end her relationship, the evidence and findings do not support a conclusion of abandonment *without just cause* on the part of Ms. Peacock. Such a holding is consistent with the purpose of N.C. Gen. Stat. § 31A-1(a)(3) to ensure "that no person shall be allowed to profit by his own wrong." N.C. Gen. Stat. § 31A-15 (2019). Ms. Peacock is not the wrongdoer here, and she should not suffer the consequence of being barred her spousal rights.

## III. CONCLUSION

The evidence presented and findings of fact made by the trial court do not support its conclusion that Ms. Peacock abandoned Decedent without just cause. Decedent abandoned her through his abuse, and nothing shows any acts of contrition or reform on Decedent's part. However, because we hold the Clerk and the trial court abused their discretion in re-dating the Assignment and Deficiency Judgment to 4 April 2019—and that holding renders the Respondents' appeal of the Assignment and Deficiency Judgment to superior court untimely—we vacate the trial court's order

barring Ms. Peacock from her spousal year's allowance and reinstate the Assignment

and Deficiency Judgment entered by the assistant clerk.

VACATED.

Judges BRYANT and HAMPSON concur.