NO. COA13-424

NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

ELIZABETH McDUFFIE RUDDER,
        Plaintiff,

    v.                                  Carteret County
                                        No. 10 CVD 1577
WILLIAM OVERTON RUDDER,
        Defendant.


    Appeal by defendant from orders entered 23 November 2010 by

Judge L. Walter Mills and 28 September 2012 by Judge Kirby Smith

in Carteret County District Court.    Heard in the Court of

Appeals 23 September 2013.


        *No brief filed on behalf of plaintiff-appellee.*

        *Wyrick Robbins Yates & Ponton, LLP, by Tobias S. Hampson,*
        *for defendant-appellant.*


        GEER, Judge.


    Defendant William Overton Rudder appeals from an ex parte

domestic violence protection order entered 23 November 2010

("the ex parte DVPO") and a one-year DVPO entered 28 September

2012 ("the September 2012 DVPO").    Defendant primarily contends

that the trial court erred in entering the September 2012 DVPO

after the ex parte DVPO was in effect for more than 18 months,

but then expired without being renewed.    We hold that because at

the time the ex parte DVPO expired without being renewed, it had been in effect for more than a year, the trial court did not have authority to enter the September 2012 DVPO that was based upon the same complaint. We, therefore, vacate the September 2012 DVPO. Because, however, we find defendant's arguments regarding the ex parte DVPO unpersuasive, we affirm that order.

### Facts

On 23 November 2010, plaintiff Elizabeth McDuffie Rudder filed a complaint and motion for a DVPO against defendant, her husband. Plaintiff had permanently moved out of the marital home 14 November 2010. Plaintiff's verified complaint alleged:

> On November 1, 2010, I confronted Defendant about having an extra-marital affair. Defendant threw me on a couch, jumped on top of me and fractured my rib with his knee. The injury was documented by a physician. Defendant has attacked me physically on numerous occasions over the course of many years, including hitting me, throwing me on the floor and shoving me. Defendant encouraged me to kill myself by putting a gun in front of me and telling me to pull the trigger. Defendant has pointed a gun at me and said "click." Defendant has threatened to kill me and my immediate family.

The trial court entered an ex parte DVPO on the same day that plaintiff filed her complaint. The order found that defendant had committed acts of domestic violence against plaintiff, that there was a danger of future acts of domestic

violence against plaintiff, and that defendant's conduct required that he surrender all firearms, ammunition, and gun permits. A "Notice of Hearing on Domestic Violence Protective Order" was issued, which scheduled a hearing on 6 December 2010 for the purpose of determining "*whether the [23 November 2010 ex parte] Order will be continued.*"[1] (Emphasis added.)

Thereafter, approximately 13 orders were entered continuing the hearing on the ex parte DVPO. The first continuance order was entitled "ORDER CONTINUING DOMESTIC VIOLENCE HEARING AND EX PARTE ORDER" and noted that "[t]his matter was scheduled for hearing for emergency relief pursuant to G.S. 50B-2."[2] This order also provided, in pre-printed text, that "this hearing is continued to the date and time specified below to allow for proper service upon the defendant." However, it is not contested that defendant was actually served on 23 November 2010, so it appears that this form was used for convenience, with little regard for its substantive content. In handwriting, the order stated that "[t]he parties agree to continue this matter to resolve the marital issues without prejudice to either party. The parties agree to not dissipate the marital assets

---

[1]This order was on the form entitled "NOTICE OF HEARING ON DOMESTIC VIOLENCE PROTECTIVE ORDER," AOC-CV-305, Rev. 6/2000 Administrative Office of the Courts.

[2]This order was on the form entitled "ORDER CONTINUING DOMESTIC VIOLENCE HEARING AND EX PARTE ORDER," AOC-CV-316, Rev. 12/04.

except for reasonable living expenses." The order further specified that "[t]he Court orders that the ex parte order entered in this case is continued in effect until the date of the hearing set above."

Nearly all of the other continuance orders were on the same form and contained the same pre-printed language that the hearing was being continued to allow time for service on the defendant. Some of the continuance orders further identified, in handwriting, the reason for the continuances as being, for example, to allow, by consent, the parties time to "resolve the marital issues"; by consent, to address matters in other pending litigation involving the parties; based upon secured leave by counsel; and because of the inability of the trial court to hear the matter due to other cases on the calendar.

The final continuance order entered 17 May 2012 was on the same form and included the same language as the first continuance order: "This matter was scheduled for hearing for emergency relief pursuant to G.S. 50B-2." This order scheduled a hearing for 9:30 a.m. on 4 June 2012. On 4 June 2012, however, no hearing took place, the trial court did not enter an additional continuance, and the court did not renew the existing ex parte DVPO. The ex parte DVPO, therefore, expired on 4 June 2012.

On 6 June 2012, defendant filed a motion pursuant to N.C. Gen. Stat. § 50B-3.1(f), requesting return of firearms seized from him pursuant to the ex parte DVPO. On 7 June 2012, plaintiff filed a Rule 60 motion, seeking relief from the 17 May 2012 continuance order "on the grounds of excusable neglect, clerical error, and mistake in that the date set for hearing this matter was explicitly intended to be heard during the June 4, 2012 *term* of court as opposed to the specific day of June 4, 2012." The record contains no indication that the trial court ever ruled on plaintiff's Rule 60 motion. Defendant, however, subsequently filed additional motions for return of his firearms on 12 June 2012 and 21 June 2012, using a *pro se* form.

The trial court calendared hearings on 31 August 2012 and 21 September 2012 to address various discovery-related motions in a related but separate divorce proceeding, as well as defendant's motion for return of firearms. At the hearing, plaintiff conceded that the *ex parte* DVPO had expired, but requested that the trial court nonetheless enter a one-year DVPO[3]

_____

[3]N.C. Gen. Stat. § 50B-3 (2013) provides that "[p]rotective orders entered pursuant to this Chapter shall be for a fixed period of time not to exceed one year." We first note that this subsection, taken in context, clearly refers only to a DVPO entered after service of process and a hearing held after notice to the defendant, even though the general term "protective order" is used. N.C. Gen. Stat. § 50B-2 (2013) specifically addresses "temporary orders" and provides for a limited duration of an ex parte DVPO of 10 days, unless the ex parte order is

based upon the underlying complaint. The trial court allowed plaintiff to present evidence to support the issuance of a one-year DVPO at the 31 August 2012 hearing. Defendant presented his evidence at the hearing on 21 September 2012.

On 28 September 2012, the trial court entered a one-year DVPO, finding that defendant had, nearly two years earlier, intentionally caused bodily injury to the plaintiff, placed her in fear of imminent serious bodily injury, and placed her in fear of continued harassment that rose to such a level as to inflict substantial emotional distress. Specifically, the trial court found:

> On November 1, 2010, the defendant shoved the plaintiff down on a couch and jumped on top of her. The defendant threatened to kill the plaintiff and her immediate family. The defendant pointed a gun at the plaintiff and informed her he could kill her without anyone ever knowing. The defendant placed a gun in front of the plaintiff and told her to pull the trigger and kill herself. Over the course of the marriage, the defendant physically assaulted the plaintiff and committed further acts of domestic violence.

Based on its findings, the trial court concluded that the "defendant has committed acts of domestic violence against the plaintiff," that "[t]here is danger of serious and immediate

continued by the trial court. We are, therefore, referring to this DVPO as a "one-year DVPO" to distinguish it from the ex parte DVPO, although we recognize that a DVPO entered after service and notice to the defendant could be entered for a fixed period of time less than one year.

injury to the plaintiff," and that "[t]he defendant's conduct requires that he[] surrender all firearms, ammunition and gun permits."  The court entered a DVPO effective for one year. Defendant timely appealed both the ex parte DVPO and the September 2012 DVPO to this Court.

## Discussion

Initially, we note that the ex parte DVPO expired 4 June 2012, and the one-year DVPO was set to expire 28 September 2013, five days after this case was heard by this Court.  This appeal is not, however, moot.  *See Smith v. Smith*, 145 N.C. App. 434, 437, 549 S.E.2d 912, 914 (2001) (holding that defendant's appeal of expired DVPO was not moot because of "'stigma that is likely to attach to a person judicially determined to have committed [domestic] abuse[]'" and "the continued legal significance of an appeal of an expired domestic violence protective order" (quoting *Piper v. Layman*, 125 Md. App. 745, 753, 726 A.2d 887, 891 (1999))).

As explained in *Smith*, "there are numerous non-legal collateral consequences to entry of a domestic violence protective order that render expired orders appealable.  For example, . . . 'a person applying for a job, a professional license, a government position, admission to an academic institution, or the like, may be asked about whether he or she

has been the subject of a [domestic violence protective order].'" *Id.* (quoting *Piper*, 125 Md. App. at 753, 726 A.2d at 891). We, therefore, may properly review both the ex parte DVPO and the September 2012 DVPO.

I

In reviewing the ex parte DVPO entered 23 November 2010, we determine "'whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Where there is competent evidence to support the trial court's findings of fact, those findings are binding on appeal.'" *Hensey v. Hennessy*, 201 N.C. App. 56, 59, 685 S.E.2d 541, 544 (2009) (quoting *Burress v. Burress*, 195 N.C. App. 447, 449-50, 672 S.E.2d 732, 734 (2009)).

Defendant argues (1) that the trial court's findings of fact were insufficient to support its conclusion that "defendant has committed acts of domestic violence against the plaintiff" and (2) that specific facts do not support its conclusion that "it clearly appears that there is a danger of acts of domestic violence against the plaintiff." We disagree.

The trial court used pre-printed form AOC-CV-304, Rev. 8/09, entitled "EX PARTE DOMESTIC VIOLENCE ORDER OF PROTECTION" for its order. The form contains 12 pre-printed "Additional

Findings." Before each numbered finding is a box corresponding to the finding as a whole. Some of the pre-printed findings contain subparts with additional boxes to check, blank spaces to fill in, or space to provide additional information.

In this case, the trial court made the following relevant findings of fact by marking the boxes next to certain pre-printed provisions and adding the information set out below in italics:

> [_] 2. That on . . . *11-01-2010*, the defendant
>
>> [x] a. . . . [x] intentionally caused bodily injury to [x] the plaintiff . . .
>>
>> [x] b. placed in fear of imminent serious bodily injury [x] the plaintiff [x] a member of the plaintiff's family [x] a member of the plaintiff's household
>>
>> [x] c. placed in fear of continued harassment that rises to such a level as to inflict substantial emotional distress [x] the plaintiff [x] a member of plaintiff's family [x] a member of plaintiff's household
>>
>> . . . .
>
> [x] 3. The defendant is in possession of, owns or has access to firearms,

ammunition, and gun permits described below. . . .

*The Defendant is in possession of hundreds of firearms and approximately 1000 boxes of ammunition which are spread through the marital residence.*

[x]  4.    The defendant

[x]  a.  . . . [x] threatened to use a deadly weapon against the [x] plaintiff . . .

[x]  b.  has a pattern of prior conduct involving the . . . [x] threatened use of violence with a firearm against persons

[x]  c. made threats to seriously injure or kill the [x] plaintiff . . .

. . . .

[x]  e. inflicted serious injuries upon the [x] plaintiff . . . in that . . . :

*Broken* [sic] *her rib.*

(Emphasis added to indicate information added by trial court to form.)

Defendant argues that by failing to mark the first box of Finding 2, which corresponds to Finding 2 as a whole, the trial court did not actually intend to make any of the findings marked under paragraph 2.  It is apparent, however, that this omission was merely a clerical error.

"'Clerical error' has been defined . . . as: 'An error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination.'" *State v. Jarman*, 140 N.C. App. 198, 202, 535 S.E.2d 875, 878 (2000) (quoting *Black's Law Dictionary* 563 (7th ed. 1999)). Clerical errors include mistakes such as inadvertently checking the wrong box on pre-printed forms. *See In re D.D.J., D.M.J.*, 177 N.C. App. 441, 444, 628 S.E.2d 808, 811 (2006).

Finding 2 on Form AOC-CV-304 corresponds to the definition of domestic violence set out in N.C. Gen. Stat. § 50B-1(a), which provides:

> (a) Domestic violence means the commission of one or more of the following acts upon an aggrieved party or upon a minor child residing with or in the custody of the aggrieved party by a person with whom the aggrieved party has or has had a personal relationship, but does not include acts of self-defense:
>
> > (1) Attempting to cause bodily injury, or intentionally causing bodily injury; or
> >
> > (2) Placing the aggrieved party or a member of the aggrieved party's family or household in fear of imminent serious bodily injury or continued harassment, as defined in G.S. 14-277.3A, that rises to such a level as to inflict

> substantial       emotional
> distress; or
>
> (3) Committing any act defined in
>     G.S. 14-27.2 through G.S. 14-
>     27.7.

The statute thus specifies several alternative ways in which one may commit an act of domestic violence.

The subparts of Finding 2 on Form AOC-CV-304 set out all the possible alternative findings that could support a finding of fact that the defendant committed an act of domestic violence. The form allows the trial court to indicate which alternatives apply by marking the relevant subparts. Thus, by checking the box next to Finding 2, the trial court indicates an ultimate finding of fact: that defendant committed an act of domestic violence. By marking the boxes next to the subparts of Finding 2, the trial court then provides more specific findings regarding how the defendant committed an act of domestic violence and against whom.

Here, the trial court provided the "date of most recent conduct" in the first line of Finding 2 and marked the subparts indicating what acts the defendant committed and against whom. Additionally, the trial court concluded as a matter of law that the defendant committed acts of domestic violence against the plaintiff. Under these circumstances, it is apparent that the trial court intended to mark the box next to Finding 2 and that

its failure to do so was inadvertent and merely a clerical error. The error should, however, be corrected on remand. *See State v. Smith*, 188 N.C. App. 842, 845, 656 S.E.2d 695, 696 (2008) ("When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record 'speak the truth.'" (quoting *State v. Linemann*, 135 N.C. App. 734, 738, 522 S.E.2d 781, 784 (1999))).

Defendant next argues that even if it is presumed that the trial court intended to mark Finding 2, the trial court's findings of fact are still insufficient. An ex parte DVPO may be issued "if it clearly appears to the court from specific facts shown, that there is a danger of acts of domestic violence against the aggrieved party . . . ." N.C. Gen. Stat. § 50B-2(c)(1). This Court has interpreted this provision to mean that "in order to issue an ex parte DVPO, the trial court must make findings of fact which include 'specific facts' which demonstrate 'that there is a danger of acts of domestic violence against the aggrieved party[.]'" *Hensey*, 201 N.C. App. at 61, 685 S.E.2d at 546 (quoting N.C. Gen. Stat. § 50B-2(c)). Defendant argues that the ex parte DVPO in this case does not contain the required "specific facts."

In *Hensey*, the ex parte DVPO, which also was a pre-printed form order, did not itself set forth specific findings of facts in the DVPO, but rather appeared to incorporate by reference the allegations of the complaint. *Id.* at 62, 685 S.E.2d at 546. This Court concluded that "while it would be preferable for the trial court to set forth the 'specific facts' which support its order separately, instead of by reference to the complaint, the ex parte DVPO, read in conjunction with plaintiff's complaint, does provide sufficient information upon which we may review the trial court's decision to issue the ex parte DVPO." *Id.* at 64, 685 S.E.2d at 547.

In reaching its conclusion, the Court in *Hensey* rejected the defendant's argument that the ex parte DVPO must comply with Rule 52 of the Rules of Civil Procedure, which requires that a trial court sitting without a jury shall "'find the facts specially.'" *Id.* at 62-63, 685 S.E.2d at 546-57. The Court concluded that ex parte orders under N.C. Gen. Stat. § 50B-2 "need not contain findings and conclusions that fully satisfy the requirements of [Rule 52]" because such a requirement "would be inconsistent with the fundamental nature and purpose of an ex parte DVPO, which is intended to be entered on relatively short notice in order to address a situation in which quick action is

needed in order to avert a threat of imminent harm." 201 N.C. App. at 63, 685 S.E.2d at 547.

Here, in the space provided under Finding 2, the DVPO neither includes specific facts nor references the allegations of the complaint, although Finding 2 does specify the date of the most recent conduct by defendant. In addition, however, Finding 4 finds that defendant had threatened to use a deadly weapon against plaintiff, had a pattern of prior conduct involving the threatened use of violence with a firearm, had made threats to seriously injure the plaintiff, and had inflicted serious injuries on plaintiff by breaking her rib. While defendant argues that Finding 4 does not indicate whether defendant intentionally broke plaintiff's rib, that finding is included in Finding 2.

We hold that the combination of Finding 2 and Finding 4 are minimally adequate to supply the required "specific facts" necessary to support the conclusion that the defendant committed acts of domestic violence against the plaintiff and that "there is a danger of acts of domestic violence against the plaintiff." We, therefore, affirm the ex parte DVPO. We note, however, that the better practice would be to include more specific facts under Finding 2 explaining the basis for the ultimate findings made by checking the boxes on the pre-printed form.

II

Defendant next contends that the trial court erred by entering the September 2012 DVPO when the ex parte DVPO had expired after being in effect for more than a year. We agree.

In this case, the ex parte DVPO continued in effect for more than 18 months until it expired on 4 June 2012. We question whether the General Assembly intended for an ex parte DVPO to continue in effect for this length of time based on repeated continuances -- in this case, a total of 13. *See* N.C. Gen. Stat. § 50B-2(c)(5) ("Upon the issuance of an ex parte order under this subsection, a hearing shall be held within 10 days from the date of issuance of the order or within seven days from the date of service of process on the other party, whichever occurs later. *A continuance shall be limited to one extension of no more than 10 days unless all parties consent or good cause is shown.* The hearing shall have priority on the court calendar."[4] (Emphasis added)). We need not, however, specifically address that issue in order to resolve this appeal.

The North Carolina Domestic Violence Act, set out in Chapter 50B of the General Statutes, specifies the procedural

_____

[4]The emphasized portion of this provision was added 1 October 2012 and is applicable to actions and motions filed on or after that date. 2012 N.C. Sess. Law 20 §§ 1, 3. Therefore, it is not applicable to this case. Nevertheless, it is indicative of the General Assembly's current intent to limit the length of time an ex parte DVPO may continue in effect.

framework for the issuance of DVPOs. The statute defines a "protective order" as "any order entered pursuant to this Chapter upon hearing by the court or consent of the parties." N.C. Gen. Stat. § 50B-1(c). As this Court explained in *State v. Poole*, ___ N.C. App. ___, ___, 745 S.E.2d 26, 32, *appeal dismissed and disc. review denied*, ___ N.C. ___, 749 S.E.2d 885 (2013), because an ex parte DVPO is entered following a hearing, the phrase "protective order" when used in Chapter 50B encompasses both ex parte DVPOs and one-year DVPOs. Although the types of protection the two kinds of orders can provide are essentially the same, there are necessarily some procedural differences between an ex parte DVPO and a one-year DVPO.

As noted in *Hensey*, an ex parte DVPO "is intended to be entered on relatively short notice in order to address a situation in which quick action is needed in order to avert a threat of imminent harm." 201 N.C. App. at 63, 685 S.E.2d at 547. In contrast, the one-year DVPO is entered only after notice to the defendant and an opportunity to participate in a full adversarial hearing. *Id.* at 61, 685 S.E.2d at 545. It is intended to address issues for a longer time period, although normally not more than three years, with temporary custody provisions limited to one year. *See* N.C. Gen. Stat. § 50B-3(b).

Unfortunately, Chapter 50B does not clearly distinguish between some of the characteristics of an ex parte order and a DVPO entered after notice to the defendant and an opportunity for a full adversarial hearing. However, reading the entire Chapter in context, it is apparent that N.C. Gen. Stat. § 50B-2 addresses the procedure and time limitations for ex parte or temporary orders, while the substantive protective provisions of any type of protective order are addressed by N.C. Gen. Stat. § 50B-3, and the time limitations of the one-year DVPO are addressed by N.C. Gen. Stat. § 50B-3(b).[5]

N.C. Gen. Stat. § 50B-3(b) specifies what relief a "protective order" may grant and, with respect to the time limitations for the one-year DVPO, provides:[6]

> Protective orders entered pursuant to this Chapter shall be for a fixed period of time not to exceed one year. The court may renew a protective order for a fixed period of time not to exceed two years, including an

---

[5]It would be absurd to read the provision of N.C. Gen. Stat. § 50B-3(b) that "protective orders entered pursuant to this Chapter shall be for a fixed period of time not to exceed one year" as applying to an emergency order under N.C. Gen. Stat. § 50B-2(b) or an ex parte order under N.C. Gen. Stat. § 50B-2(c), since those sections include specific time requirements applicable to those orders. It would seem obvious that the statute would not permit the court to enter an ex parte order that lasted for a full year. But, as noted above, N.C. Gen. Stat. § 50B-1(c) (2013) also defines the term "protective order" broadly, to include "any order entered pursuant to this Chapter upon hearing by the court or consent of the parties."

[6]The ex parte DVPO's time limitations are specifically addressed by N.C. Gen. Stat. § 50B-2(b) and (c).

> order that previously has been renewed, upon a motion by the aggrieved party filed before the expiration of the current order; provided, however, that a temporary award of custody entered as part of a protective order may not be renewed to extend a temporary award of custody beyond the maximum one-year period. The court may renew a protective order for good cause. The commission of an act as defined in G.S. 50B-1(a) by the defendant after entry of the current order is not required for an order to be renewed.

In this case, we are addressing the plaintiff's request for the trial court to enter a one-year DVPO based upon an ex parte DVPO that had already remained in effect for more than a year based upon continuances of the hearing. Even if we assume, without deciding, that an ex parte DVPO may lawfully continue for more than a year through the mechanism of repeated continuances, in this case, the ex parte DVPO ultimately expired on 4 June 2012 when no order was entered continuing the ex parte DVPO in effect after that date.

We also note that N.C. Gen. Stat. § 50B-3(b) provides that even for the renewal of a one-year DVPO, the motion for renewal must be filed *before the expiration* of the existing order. When the motion to renew is filed prior to expiration of the one-year DVPO, the plaintiff must show "good cause" although the plaintiff need not show commission of an additional act of domestic violence after the entry of the original DVPO. This

language implies that where even a one-year DVPO has expired, the plaintiff would need to allege and prove commission of an additional, more recent act of domestic violence to obtain a new order. That is, the plaintiff can rely upon the original acts that formed the basis for the issuance of the original ex parte DVPO and/or one-year DVPO for a limited time. Of course, the plaintiff is not prevented in any way from seeking a new DVPO in the event of new and additional acts of domestic violence, but the renewal and extensions of a DVPO based upon a particular act are limited by the statute.

The DVPO at issue here is clearly and exclusively based upon an act that occurred prior to the expiration of the ex parte order. The orders continuing the hearing on the ex parte order, including the one that set the matter for 4 June 2012, had scheduled the case "for hearing for emergency relief pursuant to G.S. 50B-2" -- and not for entry of an independent order under N.C. Gen. Stat. § 50B-3. The orders referred back to the original ex parte order by noting that "[t]he Court orders that the ex parte order entered in this case is continued in effect until the date of the hearing set above." Ultimately, the ex parte order then expired by its own terms.

Applying N.C. Gen. Stat. § 50B-3(b), the ex parte DVPO had already been in effect for more than one year (the maximum

permissible length of time even for a DVPO entered upon a full adversarial hearing under N.C. Gen. Stat. § 50B-2(c)(5)). We also note that no one-year DVPO that was subject to *renewal* under N.C. Gen. Stat. 50B-3 had ever been entered. Based upon the orders entered continuing the ex parte DVPO and setting this matter for hearing, upon expiration of the ex parte order after more than a year, the trial court no longer had jurisdiction under the original complaint to enter an order further extending the DVPO.

We note that this situation is distinguished from a case in which a plaintiff files a civil action or motion seeking a DVPO, but either because the plaintiff did not request an immediate ex parte order or because the trial court declined to issue an immediate ex parte order, the trial court has not entered an ex parte order and has scheduled a hearing upon the complaint or motion to consider issuance of a DVPO *after* service of process and notice of hearing to the defendant, under N.C. Gen. Stat. § 50B-2(b) (emphasis added):

> A party may move the court for emergency relief if he or she believes there is a danger of serious and immediate injury to himself or herself or a minor child. A hearing on a motion for emergency relief, *where no ex parte order is entered,* shall be held after five days' notice of the hearing to the other party or after five days from the date of service of process on the other party, whichever occurs first, provided,

however, that no hearing shall be required if the service of process is not completed on the other party. If the party is proceeding pro se and does not request an ex parte hearing, the clerk shall set a date for hearing and issue a notice of hearing within the time periods provided in this subsection, and shall effect service of the summons, complaint, notice, and other papers through the appropriate law enforcement agency where the defendant is to be served.

In fact, Form AOC-CV-305, Rev. 6/2000 has pre-printed language to provide notice of a hearing to the defendant in just that situation:

2. A hearing will be held before a district court judge at the date, time and location indicated below. At that hearing it will be determined whether emergency relief in protecting the plaintiff and the plaintiff's child(ren) should be granted.

This option was not checked in this case since an ex parte order was entered, and the first option, as noted above, was checked instead.

This case also does not present the issue whether a hearing upon a domestic violence complaint or motion, when no ex parte order was entered, could be continued repeatedly, even for more than a year, and we do not address that situation. In the case before us, plaintiff and the trial court proceeded as directed by the ex parte order issued under N.C. Gen. Stat. § 50B-2(c). As noted above, the ex parte DVPO was properly entered, remained in effect for 18 months by serial continuances of the order, and

then expired by its own terms. Thus, we hold that when an ex parte DVPO expires beyond the time limitations of N.C. Gen. Stat. § 50B-3(b) for a one-year DVPO without a motion to renew, the trial court no longer has authority to enter an order effectively further extending the expired DVPO, as the trial court would also be unable to extend even a one-year DVPO in this situation without a motion to renew.[7]

Because the trial court, in this case, lacked authority to enter the September 2012 order after the ex parte DVPO expired more than 18 months after its original entry, we vacate the September 2012 DVPO and remand for a hearing on defendant's motion for return of firearms. Because of our disposition of this appeal, we need not address defendant's remaining arguments regarding the September 2012 DVPO.

Affirmed in part, vacated in part, and remanded in part.

Chief Judge MARTIN and Judge STROUD concur.

---

[7]As plaintiff here did not file a motion to renew under N.C. Gen. Stat. § 50B-3(b), we do not address whether an ex parte DVPO is actually subject to renewal in this manner, nor do we mean to suggest that it could be, particularly given the limitations of N.C. Gen. Stat. § 50B-2(c)(5).