IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-872

Filed 7 January 2026

Guilford County, No. 24CVD520133-400

RYAN LYNN HAYS, Plaintiff,

v.

MATTHEW THOMAS LEWIS, Defendant.

Appeal by Defendant from order entered 7 June 2024 by Judge Larry L. Archie in Guilford County District Court. Heard in the Court of Appeals 22 May 2025.

*Beacon Legal PLLC, by Gavin J. Reardon, for defendant-appellant.*

*Bullock Clay & Furr, PLLC, by Jessica S. Bullock, for plaintiff-appellee.*

STADING, Judge.

Matthew Thomas Lewis ("Defendant") appeals from entry of a domestic violence protective order ("DVPO"). Defendant contends the trial court exceeded its authority by entering the DVPO with a statutorily impermissible expiration date. After careful consideration, we affirm the trial court's order.

## I. Background

Ryan Lynn Hays ("Plaintiff") and Defendant "are persons of the opposite sex who are not married but live together" and share two minor children. The record tends to show that the parties' relationship ended after Defendant made "some threats" to Plaintiff. In response, on 8 March 2024, Plaintiff filed a complaint

requesting a DVPO against Defendant. That same day, the trial court granted Plaintiff's request for ex parte relief. The ex parte DVPO stated it "shall be effective until" 15 March 2024—the date scheduled for a hearing after notice to Defendant and an opportunity to be heard concerning whether the trial court should grant or deny Plaintiff's action "for a fixed period of time not to exceed one year" under N.C. Gen. Stat. § 50B-3 (2023).

On 15 March 2024, Defendant moved for a continuance. The trial court granted Defendant's motion and ordered that the ex parte DVPO remain in effect until the new hearing date of 28 March 2024. On the next hearing date, Defendant again moved for a continuance. The trial court also granted this motion and ordered that the ex parte DVPO remain in effect until the new hearing date of 25 April 2024. Plaintiff thereafter moved for the disqualification of Defendant's attorney, citing a conflict of interest. On 25 April 2024, Plaintiff's motion was heard, and following admonishment to Defendant's attorney for the conflict, Defendant requested his attorney to withdraw and moved for a third continuance. Again, the trial court granted Defendant's motion for a continuance and ordered that the ex parte DVPO remain in effect until the new hearing date of 6 June 2024.

On 30 April 2024, Defendant moved for relief under North Carolina Rule of Civil Procedure 60(b) and "sanctions OR (in the alternative) . . . for attorneys fees." Defendant requested the trial court to set aside the ex parte DVPO and attached an

affidavit of "a close friend to the parties." The trial court ordered Defendant's motion to be heard in conjunction with the DVPO on the next court date.

The trial court conducted a hearing on 7 June 2024, and found: "On [or] about March 24, Defendant threaten[ed] to ass[a]ult [ ] Plaintiff. Defendant has a long history of threatening and placing the Plaintiff in fear [of] imminent serious bodily injury. March 7[ ] the Defendant contacted the Plaintiff 84 times with threats to her livelihood, and employment." Thus, the trial court concluded, inter alia, that "[t]he defendant committed an act of domestic violence against the plaintiff," and "[t]here is danger of serious and immediate injury to the plaintiff." And so, effective until 6 June 2025, the trial court ordered, among other things, Defendant "shall not commit any further acts of domestic violence or make any threats of domestic violence," and "shall have no contact" with Plaintiff. It also ordered Defendant to "not assault, threaten, abuse, follow, harass . . . , or interfere with" Plaintiff, nor to "interfere with the minor children residing with" Plaintiff. Additionally, the trial court granted Plaintiff "possession of . . . the parties' residence," and "custody of the minor children," but granted Defendant visitation.

On 27 June 2024, Defendant filed his notice of appeal.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(2) (2023) ("[A]ppeal lies of right directly to the Court of Appeals in any of the following cases . . . [f]rom any final judgment of a district court in a civil action.").

## III. Analysis

Defendant asks our Court to consider whether the trial court exceeded its authority under N.C. Gen. Stat. § 50B-3 in ordering the DVPO effective until 6 June 2025 since an ex parte DVPO was entered before 7 June 2024. He contends N.C. Gen. Stat. § 50B-3 prohibits the combined length of the two DVPOs since it exceeds one year. Thus, the core of this appeal is the meaning and applicability of the time limitations set forth in the North Carolina Domestic Violence Act, codified in Chapter 50B of the North Carolina General Statutes. We are therefore tasked with interpreting the statute and determining its applicability to this matter.

Defendant presents a novel question of statutory construction. "Questions of statutory interpretation are ultimately questions of law for the courts and are reviewed de novo." *In re Summons Issued to Ernst & Young, LLP*, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009). "Our primary goal in construing a statute is 'to ensure that the purpose of the legislature, the legislative intent, is accomplished.'" *Wynn v. Frederick*, 385 N.C. 576, 581, 895 S.E.2d 371, 377 (2023) (quoting *Elec. Supply Co. v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991)). To accomplish this task, "we first look to the plain meaning of the statute." *In re Summons Issued to Ernst & Young, LLP*, 363 N.C. at 616, 684 S.E.2d at 154 (quoting *Frye Reg'l Med. Ctr., Inc. v. Hunt,* 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999)). "Where the language of a statute is clear, the courts must give the statute its plain meaning; however, where the statute is ambiguous or unclear as to its meaning, the courts must

interpret the statute to give effect to the legislative intent." *Id*. Our application of the plain meaning rule requires us to "consider the context in which the statutory words are used because '[w]e do not . . . construe statutory phrases in isolation; we read statutes as a whole.'" *Ayes v. United States VA*, 473 F.3d 104, 108 (4th Cir. 2006) (quoting *United States v. Morton*, 467 U.S. 822, 828, 104 S. Ct. 2769 (1984)). If the text at issue is unambiguous, then our "judicial inquiry is complete." *Id. (*quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 254, 112 S. Ct. 1146, 1149 (1992)).

"Our General Assembly enacted the Domestic Violence Act, N.C.G.S. Chapter 50B, to respond to the serious and invisible problem of domestic violence." *State v. Elder*, 368 N.C. 70, 72, 773 S.E.2d 51, 53 (2015) (citation modified) (quoting *Augur v. Augur*, 356 N.C. 582, 591, 573 S.E.2d 125, 132 (2002)). The North Carolina Domestic Violence Act proscribes the procedural framework for issuance of protective orders. *See* N.C. Gen. Stat. § 50B-1 et seq. Defendant claims the time limitations imposed by N.C. Gen. Stat. § 50B-3(b) "must include any period in which there was an *ex parte* order. . . ." That subsection provides:

> Protective orders entered pursuant to this Chapter shall be for a fixed period of time not to exceed one year. The court may renew a protective order for a fixed period of time not to exceed two years, including an order that previously has been renewed, upon a motion by the aggrieved party filed before the expiration of the current order; provided, however, that a temporary award of custody entered as part of a protective order may not be renewed to extend a temporary award of custody beyond the maximum one-year period.

N.C. Gen. Stat. § 50B-3(b). We thus begin our analysis by considering the plain meaning of the N.C. Gen. Stat. § 50B-3(b) to effectively apply the statute as written. *See Wynn*, 385 N.C. at 581, 895 S.E.2d at 377.

## A.  Statutory Interpretation

Defendant contends the "start" date for "a fixed period of time not to exceed one year" for a DVPO entered under N.C. Gen. Stat. § 50B-3(b) cannot be determined "by the express terms of the Act." Further, Defendant argues "[t]he one[-]year period in § 50B-3(b) should be narrowly construed to include any period in which there was an ex parte order under G.S. § 50B-2." First looking to the plain meaning of the statute reveals Defendant's argument as defective.

The provision at issue states: "Protective orders entered pursuant to this Chapter shall be for a fixed period of time not to exceed one year." N.C. Gen. Stat. § 50B-3(b). "When construing a statute, we first examine the plain words of the statute, as the best indicia of legislative intent is the language of the statute itself." *Wynn*, 385 N.C. at 581, 895 S.E.2d at 377 (cleaned up). "If the plain language of the statute is unambiguous, we 'apply the statute[ ] as written.'" *Id.* (quoting *N.C. Dep't of Correction v. N.C. Med. Bd.*, 363 N.C. 189, 202, 675 S.E.2d 641, 649 (2009)).

Although "the substantive protective provisions of any type of protective order are addressed by N.C. Gen. Stat. § 50B-3," *Rudder*, 234 N.C. App. at 183, 759 S.E.2d at 328, this Court recognizes a distinction between ex parte DVPOs and DVPOs entered only after notice to the defendant and an opportunity to participate in a full

adversarial hearing. *See*, *e.g.*, *id.* at 173, 182–83, 759 S.E.2d 321, 328 (noting an ex parte DVPO is intended to address a threat of imminent harm while "the one-year DVPO is entered only after notice to the defendant and an opportunity to participate in a full adversarial hearing . . . to address issues for a longer time period. . . ."); *see also*, *Hensey v. Hennessy*, 201 N.C. App. 56, 63, 685 S.E.2d 541, 547 (2009). As explained by this Court in *Hensey*, ex parte DVPOs and DVPOs entered only after notice and an opportunity to be heard are *"independent of one another. . . ."* 201 N.C. App. at 66, 685 S.E.2d at 548 (emphasis added). These orders are distinct—a DVPO entered after notice and an opportunity to be heard is not merely an extension of an existing ex parte DVPO; it is entered independently of the ex parte DVPO and separately by the trial court only after an adversarial hearing, or by consent of the parties. *See* N.C. Gen. Stat. § 50B-2(c)(5) (2023); *see also* N.C. Gen. Stat. § 50B-3(b1) (2023). Therefore, the plain meaning of "[p]rotective orders entered pursuant to this Chapter" places a limitation "of time not to exceed one year" beginning upon the of issuance of a DVPO entered after notice and an opportunity to be heard and does not include the time encompassed by an ex parte DVPO. *Id.* § 50B-3(b).

Furthermore, considering the applicability of N.C. Gen. Stat. § 50B-3(b) within the context of the Domestic Violence Act illustrates why Defendant's urged reading of the statute is the product of viewing a particular subsection through an overly narrow aperture. Our Court "does not read segments of a statute in isolation." *Rhyne v. K-Mart Corp.,* 358 N.C. 160, 188, 594 S.E.2d 1, 20 (2004). "Context is a primary

determinant of meaning. A legal instrument typically contains many interrelated parts that make up the whole. The entirety of the document thus provides the context for each of its parts." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012).

Our analysis must therefore account for another subsection in the Domestic Violence Act specifically addressing the time limitations imposed on ex parte DVPOs:

> Upon the issuance of an ex parte order under this subsection, a hearing shall be held within 10 days from the date of issuance of the order or within seven days from the date of service of process on the other party, whichever occurs later. A continuance shall be limited to one extension of no more than 10 days unless all parties consent or good cause is shown. The hearing shall have priority on the court calendar.

N.C. Gen. Stat. § 50B-2(c)(5). The legislature provided particularized safeguards within the text of N.C. Gen. Stat. § 50B-2(c)(5), precisely addressing Defendant's concerns. That subsection demands that continuances "shall be limited to one extension of no more than 10 days *unless all parties consent or good cause is shown*." N.C. Gen. Stat. § 50B-2(c)(5) (emphasis added). And, "[t]he hearing shall have priority on the court calendar." *Id.*

Here, Defendant bears responsibility for the majority of the delay of which he now complains. Save the time initially set forth in the ex parte DVPO until its expiration—one week, the record shows each instance of the trial court's granting a continuance of the ex parte DVPO was due to Defendant's request. The built-in

procedural protections of N.C. Gen. Stat. § 50B-2(c)(5) were designed by the legislature to save litigants in Defendant's position from unnecessarily prolonged ex parte DVPOs. We do not believe it an accident, but by thoughtful design, that the legislature included language in N.C. Gen. Stat. § 50B-2(c)(5) carefully limiting the length of ex parte DVPOs separately from the one-year limitation contained in N.C. Gen. Stat. § 50B-3(b).

Our adoption of Defendant's urged reading of N.C. Gen. Stat. § 50B-3(b) would ignore the limitations already provided in N.C. Gen. Stat. § 50B-2(c)(5). Reading both subsections together shows a statutory scheme calculated to limit the total length of the process as a whole. We thus decline to "superimpose[ ] provisions and limitations not contained" in N.C. Gen. Stat. § 50B-3(b). *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388-89 (1978). Considering the plain language of N.C. Gen. Stat. § 50B-3(b), in context, further compels us to hold that a DVPO entered after notice and an opportunity to be heard is not merely an extension of a previously entered ex parte DVPO entered under N.C. Gen. Stat. § 50B-2; it is an independent, separately issued protective order entered "for a fixed period of time not to exceed one year." N.C. Gen. Stat. § 50B-3(b).

## B. *Rudder*

Defendant contends his position is suggested by this Court's opinion in *Rudder v. Rudder*, 234 N.C. App. 173, 759 S.E.2d 321 (2014). We first note that *Rudder* dealt with whether a trial court lost jurisdiction to enter a DVPO under N.C. Gen. Stat. §

50B-3, after an ex parte DVPO, entered under N.C. Gen. Stat. § 50B-2, had expired before the hearing and more than one year had passed since its issuance. 234 N.C. App. at 184, 759 S.E.2d at 329 ("Based upon the orders entered continuing the ex parte DVPO and setting this matter for hearing, upon expiration of the ex parte order after more than a year, the trial court no longer had jurisdiction . . . to enter an order further extending the DVPO.").

The ruling in *Rudder* does not suggest the time limitations of a DVPO entered after notice and an opportunity to be heard should incorporate a previously issued ex parte DVPO. In fact, the *Rudder* opinion consistently referred to a DVPO entered after notice and an opportunity to be heard as a "one-year DVPO." 234 N.C. App. 173, 759 S.E.2d 321. And contrary to Defendant's contention, the *Rudder* opinion contemplates that N.C. Gen. Stat. § 50B-2 "addresses the procedure and time limitations for ex parte or temporary orders, while the substantive protective provisions of any type of protective order are addressed by N.C. Gen. Stat. § 50B-3, *and the time limitations of the one-year DVPO are addressed by N.C. Gen. Stat. § 50B-3(b).*" *Id.* at 183, 759 S.E.2d at 328 (emphasis added). The *Rudder* Court declined to hold that ex parte DVPOs necessarily expire after one year when repeatedly continued. *Id.* at 184, 759 S.E.2d at 329 ("Even if we assume, without deciding, that an ex parte DVPO may lawfully continue for more than a year through the mechanism of repeated continuances, in this case, the ex parte DVPO ultimately

- 10 -

expired . . . when no order was entered continuing the ex parte DVPO in effect after that date."). Defendant's reliance on *Rudder* is therefore misguided.

## IV. Conclusion

The trial court did not exceed its statutory authority since the one-year time limitation imposed by N.C. Gen. Stat. § 50B-3(b) does not include the time that an ex parte DVPO, entered under N.C. Gen. Stat. § 50B-2, was in effect.

AFFIRMED.

Judges FLOOD and MURRY concur.